ANDREW ELLICOTT *vs*. THE UNITED STATES INSURANCE
COMPANY.—*December* 1848

Where the only object of a decree, appointing receivers and awarding an
injunction, so far as disclosed upon its face, was to provide for the safe
keeping of the effects of the defendant, and to prevent any fraudulent
transfer thereof; and where such decree did not state that the ulterior in-
tent of the court was, to make an equitable distribution of the funds, and
contained no direction to the receivers, to give notice to creditors to file
their claims, it was HELD:

That this decree imposed no restrictions upon creditors in prosecuting their
claims, either at law or in equity, and a judgment subsequently recovered
by a creditor, is as much a lien on the real estate of the defendant, as if
the appointment of receivers had never been made.

But in equity, this lien attaches only to such interest in the real estate, as
the defendant had therein at the time the receivers were appointed, and
cannot be extended to the increased value of the property, resulting from
payments of purchase money made thereon by the receivers.

No proceedings of the court requiring creditors to bring in their claims, for
the purpose of receiving their distributive shares of the property of the de-
fendant in the hands of the receivers, adopted *after* the rendition of the
judgment, can operate retroactively to impair the validity of its lien.

A court of equity will not restrain a creditor from prosecuting his legal rem-
edy against the personal representatives of his debtor, unless there is a
decree under which the creditor has a present right to go in and prove his
debt.

If the decree had stated the ulterior object of the court, in placing the effects
of the defendant in the hands of receivers, to have been, that it might make
an equitable distribution thereof amongst creditors, and had directed the
receivers, to give the usual notice to creditors to file their claims, then any
creditor who should institute or continue to prosecute a suit at law, to re-
cover a judgment on his claim, would have been enjoined on application,
and if no such application were made, the court would regard his judg-
ment, if obtained, as an unwarrantable interference with the jurisdiction
it had assumed, and reject it as a lien on the property, in the hands of the
receivers.

A receiver is an officer of the court, but his appointment determines no right,
nor does it affect the title of the property in any way; it will not prevent
the running of limitations. His holding is the holding of the court, for
him from whom the possession was taken. He is appointed on behalf of all
parties, and if any loss arise from deficiency in his accounts, the estate
must bear it.

The effect of his appointment, is not to oust any party of his right to the
possession of the property, but merely to retain it, for the benefit of the
party ultimately entitled, and when such party has been ascertained, the
receiver will be considered as his receiver.

APPEAL from the Equity Side of *Baltimore* county court.

The original bill in this case was filed by *Herman Stump*, on the 24th of May 1834, against the appellees. *The United States Insurance Company*, alleging that he is the creditor of the company to a large amount, as the holder of its policies, exhibited with the bill ; that the company has stopped payment, closed its operations, and is wholly unable to pay its debts, which are very large; that there has been gross mismanagement of its affairs by its president and directors, and that the conduct of said president and directors, in permitting members of the board of directors to obtain policies of the company, to an enormous amount without sufficient security to the company, has been grossly fraudulent *to* all the creditors of the company. The bill further states, that the company, although utterly insolvent, is giving up to the directors and others in whose misconduct or frauds, its insolvency originated, the effects of the company in payment of policies which have come to their hands, since the company stopped payment, and become notoriously insolvent; that the assignment or delivery by the company of any of its securities or effects, since it became insolvent, in payment of any policy, is an undue preference of such creditor, and operates as a fraud upon the complainant and all the other creditors of the company; that the directors knowing that the company is utterly insolvent, are yet fraudulently transferring its effects to certain favored creditors to pay their claims in full, and that if they persist in this fraudulent and inequitable course, the whole property of the company will be given to a few creditors to the exclusion of the complainant and other creditors; and that the course they pursue is, not to receive or pay any policies except for those whose securities are held by the company, which they pay in full, and thus exclude all others. The bill, then, after various special interrogatories, prays for an injunction restraining the company, its officers, servants and agents, from transferring, assigning, releasing, or in any manner disposing of, or parting with any of the property or securities of the company, and from interfering with or in any manner diminishing the property, effects or funds of said company, and also from parting with the securities on

which the complainant's policies were issued. And that an equal and equitable distribution of the effects and property of said company may be made among all its creditors; your orator prays that your honors will appoint a receiver or receivers to take into custody all the property, estate and effect, of said company, and distribute and dispose of them under the direction and authority of your honors; and that said company may be ordered, and enjoined forthwith to deliver up to said receiver or receivers, all the estate, property and effects, books, papers, securities and credits of said company, and for general relief.

The court on the same day ordered the injunction to issue as prayed, and assigned a time for the defendants to show cause why a receiver should not be appointed, to take charge of all the effects of the company, and administer the same according to justice and equity.

Upon this bill and motion for a receiver, the company filed its answer, and after much evidence offered by affidavits, in support of the motion, and various recommendations by creditors of the company, of suitable persons for receivers, the court, (ARCHER, C. J., MAGRUDER and PURVIANCE, A. J.,) on the 31st of May 1834, passed the following decree appointing receivers.

"Upon the application of the complainant and by and with the *assent of the defendant*, it is ordered, adjudged and decreed by the court, this 31st day of May 1834, that *James Harwood, John B. Howell and Walter Farnandis*, be and they are hereby appointed receivers, to take and receive the property, estate and effects of the said company." The decree then requires a bond with approved security from said receivers, in a penalty of $100,000, conditioned for the faithful discharge of their duties as receivers. "And it is further ordered and decreed, that the said *United States Insurance Company*, deliver up to the said receivers all the goods, chattels, lands, tenements, credits and effects of said company; and also all its books, papers and evidences of debts; and it is further ordered, that the said receivers institute in the name of said company or otherwise as the case may require, all suits and actions necessary, or which they may deem expedient, for the recovery of the debts

due, or other property of the said company; and that they are hereby authorised to use the name of said company in any suit or action which they may deem it expedient to institute.    It is further ordered and decreed, that the injunction heretofore issued, be, and the same shall stand and remain till further order of this court.    It is further ordered, that this court will require additional bonds to be given by the receivers, upon the application of the parties interested, for greater security in the discharge of their duties, should such application be made at any future stage of the cause, and there should be sufficient grounds laid for such application."

After various other proceedings in the cause, not material to this appeal, a petition was filed on the 5th of April 1835, by *John Sullivin*, and many other creditors, for the purpose of rescinding the appointment of receivers.    This petition states, that the ground of appointment of the receivers was, as they are informed, the misconduct or negligence of the old president and directors, that since their appointment the old board have been removed and a new president and directors elected, and that they conceive the interests of the creditors will be promoted by rescinding the appointment of receivers, and putting the affairs of the company in the hands of the new board, for the reasons assigned.

To this petition the receivers filed a full answer, reporting all their proceedings in their office from their appointment until the time of their filing said answer in April 1835, and the court on the 23rd of May 1835, by its order and decree, dismissed the petition, from which there was an appeal to this court at June term 1835, which was dismissed by the appellants, (*Sullivin* and others,) at June term 1836.

From this period the receivers continued in their office, and in the discharge of their duties, under the order and direction of the court; and on the 1st of November 1840, they report a sale of property, which is confirmed by the court; and on the 18th of the same month, state by petition, that they will be prepared to make a dividend of the assets in hand, and pray for notice to be given to the creditors of said company, to produce their claims to them, the receivers.    The court accordingly passed

on the same day an order, directing said receivers to give notice by advertisement, to the creditors of said company, to produce their claims to said receivers duly authenticated, on or before the first day of June next, in order to receive the dividends due on their respective claims.

On the 10th of September 1841, a special auditor was appointed by the court, to state the accounts in order to a distribution, who, on the 14th of October following, made his first report, recommending a dividend of 12 cents on the dollar; and on the 25th of the same month, a second special report, in which he states, that in April 1841, a claim had been filed under the order of the 18th of November 1840, requiring creditors to file their claims, by *John Glenn,* attorney for *Andrew Ellicott,* for $5000 on which a judgment had been obtained on the 21st of October 1837, by said *Ellicott,* against the *United States Insurance Company,* which with interest and costs amounted to $7249.41. At the time of filing this claim by *Mr. Glenn,* a short copy of the judgment was also filed, on which was endorsed; "This is claimed as a lien upon the real and equitable estate of this company, on lands," &c. This report further stated, that as part of the property reported as sold by the receivers, was real estate belonging to said company, amounting to more in value than said judgment, the counsel for said *Ellicott* claim to be paid the whole debt, interest and costs, and this question the auditor submits to the court. A short copy of this judgment was filed as an exhibit with this report, showing that the same was rendered at September term 1837, of *Baltimore* county court, by confession for $5000, with interest from the 30th of April 1834, and costs.

To this claim for a lien, the said receivers and other creditors of the company excepted, and state as cause of exception, that long before the rendition of said judgment, to wit: on the 30th of May 1834, all the property and effects of the said company, were, by a decree of *Baltimore* county court, placed in the hands of receivers, for the purpose of an equal distribution amongst the creditors and the defendants enjoined from intermeddling therewith, or in any manner disposing thereof, and the said property being under the control and custody of this court, as a

court of equity, no lien at law could be obtained thereon. And the receivers further excepted to this claim, because long before the rendition of said judgment, the receivers, under an order of said court, had given bond and taken possession of all the real and other estate of the said company; and said property being thus in the hands of a court of equity, no lien at law could be obtained thereon.

The facts stated in these exceptions, were admitted by the counsel for *Ellicott* to be true; and it was on the same day (25th of October 1841,) agreed by the counsel for the respective parties, that the auditor's report then made might be confirmed, and that the claimant, *Ellicott*, reserve to himself the right of claiming the full amount of his judgment, as a preferred claim, out of any further funds which might thereafter come into the hands of the receivers, and that it should be so paid, if it should be determined by the court, that it was to be paid in full as a preferred claim or lien upon the property.

According to this agreement, the court ratified the auditor's report, and the dividend was paid accordingly. No further proceedings were had in the cause until the 7th of March 1847, when *Ellicott*, the present appellant, filed his petition in the cause, setting out his claim above mentioned, at length; that it was founded on a judgment obtained by the petitioner in *Baltimore* county court, against the said *Insurance Company*, on the 21st of October 1837, for the sum of $5000, with interest from the 30th of April 1834, and costs. And the petition avers, that at the time of the recovery of said judgment, the said company was seized of real estate in the city of *Baltimore*, which was therefore bound by the lien of said judgment, and that the legal title to said real estate yet remains in the company, but that because of the appointment of the receivers under the order of the court in this cause, the petitioner was advised that he could not levy a *fi. fa.*, or other legal process of execution on said real estate, and it was therefore agreed that he should file his claim in this cause, and pray for such relief as his case required. It further states, that a part of said real estate had been sold, and the proceeds distributed amongst the creditors generally, under the agreement of October 1841, (above stated,)

that other parcels of real estate, and also personal estate are yet unsold, and that if the receivers have been in possession of the same, they must have received a large amount of rents and profits, which he claims to be bound by his lien. It then prays that the petitioner may be at liberty to proceed with his execution, or that the real and personal estate on hand may be sold by the receivers, and the proceeds applied to pay his judgment, and that the receivers may discover whether they have been in actual possession of said premises, and that they may account for the rents and profits, which they may have received or might have received, and for general relief.

The answer of the receivers to this petition was filed on the 23d of March 1847, and they answering for themselves, the company, and the creditors of the company, admit the judgment of the petitioner, and state that under the bill in this cause, filed on the 24th of May, 1834, against said company, and after answer and hearing, they were, by the order and decree of this court, passed by consent in this cause, on the 31st of May 1834, and upon the recommendation of the complainant, and the various creditors of the company, appointed receivers of all the property of the company, for the purposes and objects of the bill, and the application for a receiver or receivers therein made ; that by said decree, and injunction thereon, the company was enjoined from transferring, assigning, releasing, or in any manner parting with, any of the property of the company, or in any manner interfering with or diminishing the same. They also state, that having been so appointed receivers, they duly qualified as such, on the 4th of June 1834, by giving an approved bond of that date, and immediately entered on the discharge of their duties as such, in collecting and getting possession of all the assets and property of the company; and that before the petitioner obtained his judgment, they, as receivers, had obtained possession of all the property and estate, whatsoever, of the company, and have, ever since their said appointment, continued as receivers under it ; and that said decree has ever since remained in full force. They also state, that after they were so appointed and qualified as receivers, this court, having thus assumed the cus-

tody, control and administration of all the property of the company, continued to direct and control the administration of the same by various orders passed in this cause, before the petitioner obtained his judgment, to which they refer as part of their answer, more especially to the orders directing calls to be made on stockholders for instalments, and suits to be brought against delinquent stockholders, and also against certain directors of the company; to the order passed 1st of November 1834, directing the advertisement to creditors to present their claims to the receivers, and the advertisement, in pursuance thereof ; to the order of the 1st. of November 1834, authorizing the receivers to complete the payment of the purchase money due on the house occupied as the office of the company; to the orders sanctioning the compromise by the receivers of claims due the company, and to the proceedings on the application to rescind the appointment of said receivers. They also aver, that before and at the time when the petitioner obtained his judgment, he had notice of said cause, and of the proceedings under which they were so appointed receivers. They further admit that they obtained possession, as part of the property of the company, of a house and lot in South street, which was bought by the company in fee for $10,000, and on which, before the appointment of receivers, the company had paid $4375, but had not obtained the legal title thereto, and that the balance of the purchase money was paid by them, the receivers, under the order of this court, as shewn by their petition, and order of the court of the 1st of November 1834 ; that this house and lot were afterwards sold by them, and the sale ratified by the order of the 19th of January 1841 ; and that as to all the rest of what is termed the real estate of the company, which came to their possession, and was held by them at the time of the judgment, they cannot without a particular examination of the file papers, state distinctly as to each parcel, what was the nature of the estate, or interest in it, held by the company, and whether leasehold or real, but will render a particular account of the same and of the rents and profits, if upon the decree upon this petition it becomes material to ascertain it. But they state that all of it, except the house and lot on South street,

was received and held by the company, and so held when the receivers got possession of it, by way of mortgage or security to the company for the payment of debts due it. They further admit the filing of petitioner's claim, under his judgment in April 1841, under the court's order directing advertisement to creditors of the 18th of November, 1840, but they deny it was filed under any agreement made with the respondents before or at the time of filing the claim, but admit the agreement of 25th of October, 1841, (above stated,) and after again averring that the court ever since their appointment as receivers, has continued to control and direct the administration of all the estate of the company, in order to its equal and rateable distribution, they refer to the court's order for distribution, and distribution made amongst creditors, rateably, under the special auditor's report of 14th of October 1841, and 21st of January 1842, subject to the above agreeement of 25th of October 1841. The answer therefore insists, that the said claim of the petitioner was not, and is not, a lien on the real estate of the company, or any part thereof, in the hands of said receivers, or upon the proceeds, or rents and profits of any part of the same, and that he is not entitled to any priority of payment thereout, and that having received his full rateable share of the assets, as distributed under the order of the court, he is not entitled to any relief.

It was then, by agreement, admitted, that the respondents had obtained possession as receivers, of all the property and estate of said company, as stated in their answer before the petitioner's judgment was obtained ; and that the petitioner had notice of this cause, and of the proceedings under which said receivers were appointed, as stated in the answer, before he obtained his judgment ; and that the petitioner's action, in which his judgment was obtained, was instituted by writ issued out of *Baltimore* county court, on the 1st of May 1834 ; and that the charter of the company shall be considered in evidence. By another agreement it was admitted, that a part, at least, of the real estate of the defendant, now held by the receivers, was held by the defendant under mortgages or pledges for the payment of debts due by the parties mortgaging or pledging the

same to the defendant, and in no other way ; that as to the residue, it is uncertain at this time whether it was held under mortgage, or pledge simply, or under a purchase, and it is agreed, that if the decision of the court on the present application, shall render such further report or answer necessary, the receivers shall be ordered to report a particular account or schedule of all the real estate of the defendant in their possession, and held by them and the said defendant, and produce the title papers thereof, and such other information as may be necessary, under the court's opinion, to dispose of this petition finally ; and that the facts in relation to the house and lot in South street are as stated in the answer.

On this petition and answer the court, (LE GRAND, J.,) on the 7th of April, 1847, passed the following decree : The only question arising under this petition, is, when did the jurisdiction of this court, as a court of equity, so attach as to place the whole estate and assets of the defendant subject to the orders of distribution of this court? I have carefully examined the cases referred to in the argument of counsel, and also others, but regarding the decisions heretofore made by *Baltimore* county court, as binding on me, I do not deem it necessary to express any opinion, as to what would be my decision were the question for the first time presented.

This court has on several occasions decided, that on the appointment of the receivers, under the bill in this case, the whole control of the funds and estate of the defendant were vested in the court of equity; and as a consequence of this, it necessarily follows, under all the decisions, that no judgment obtained thereafter at law, can be entitled to a preference. It is therefore ordered, this 7th day of April 1847, that the petition of *Andrew Ellicott*, filed on the 7th of March 1847, be and the same is hereby dismissed.

From this decree *Ellicott* appealed.

The cause was argued before DORSEY, C. J., MARTIN and FRICK, J.

By ALEXANDER for the appellant, who insisted :

1st. That the appointment of the receivers, and other proceedings in this cause anterior to the 21st of October 1837,

did not displace the legal title of the said company, and therefore, the judgment recovered by the appellant on that day, was, at law, a lien on the lands held by the company.

2nd. That as the proceedings, anterior to the recovery of said judgment, did not transfer to the court of chancery an effectual and exclusive jurisdiction over the subject of this suit, the lien of said judgment ought to be respected and enforced in equity.

FARNANDIS and McMAHON for the appellee, contended:

1st. That under the bill filed by *Stump* against the *United States Insurance Company,* alleging fraud, inequitable preferences, made, or intended to be made, and insolvency, and praying the injunction and appointment of a receiver, "in order to an equal and equitable distribution of all the effects and property of the company;" and by the decree, by consent passed after answer filed, granting the injunction and appointing the receivers, upon notice to, and recommendations for the office, from the creditors of the company, in all those who availed themselves of the privilege of recommending, *Baltimore* county court, as a court of equity, assumed the possession, control and disposition of all the assets of the company, in order to the equal and equitable administration and distribution of them amongst the creditors of the company, or to enable it to make the same; and that after the court obtained by its officers, the receivers, the actual possession of all the property of the company, no creditor could, by a proceeding at law against the company, obtain a lien on any part of the property, so as to give him a priority in payment out of it over other creditors, and thereby prevent the equal and equitable distribution which was the object, or within the contemplation of the said proceedings in equity.

2nd. That by said bill, and decree by consent, and by the various proceedings in said cause, of the said court, and the creditors of said company, *prior* to the petitioner's judgment; and especially the proceedings for getting in all the assets of the company, by suit or compromise, paying off liens upon the property, and reducing it into money by sale of it; for calling

in all claims against the company, under which $195,000 of said claims were actually notified to, and registered with the receivers by the creditors; and on the application to rescind the appointment of the receivers; and by the payment of all the costs of the proceeding of *Stump,* on both sides, out of the fund of the company, the said proceeding in equity was recognised and adopted by said court, and the creditors of said company, as one for the equal and equitable administration of all its assets under which all creditors were entitled to come in:— that this, the original purpose and object of the court, by its said decree and proceedings, is conclusively illustrated by its subsequent proceedings down to the dividend in 1841, all of which flowed from and depend upon the jurisdiction assumed by the court, before the petitioner's judgment; and that therefore his judgment gained him no priority.

3rd. That the judgment of the petitioner having been obtained by the *confession of the company,* was itself a breach of the injunction, if it carried with it the consequence of priority; and could therefore, give no such priority.

4th. That by the filing of his claim, under the notice to creditors to file their claims, in order to a dividend, the petitioner, (notwithstanding the endorsed reservation of his lien,) submitted himself to the jurisdiction of the court in that cause —and that, at all events, when he came in by petition in that cause, asking the aid of that court as a *court of equity,* and in the exercise of the jurisdiction assumed by it in that cause, to decree to him a priority by force of his said judgment, the court was not bound to allow, and ought not to have decreed him a priority alleged to have been gained by a proceeding at law, which was at war with the whole object and scope of the proceedings under *Stump's* bill, which was, in itself, a breach of the injunction on the part of the company; and which, if pushed to its fullest extent, and admitted to gain a priority, would have enabled some of the creditors to take away all the property of the debtor, not only from the numerous creditors who had made themselves parties to that proceeding, and had relied upon it for the satisfaction of their claims, but also even from the complainant, and would thus have subverted the whole objects of the proceeding.

Dorsey, C. J., delivered the opinion of this court.

The only object of the court below in the appointment of receivers, so far as it is unfolded upon the face of the decree itself, was to provide for the safe keeping of the property and effects of the *United States Insurance Company.* And the design of the injunction, awarded by the decree, was to restrain the president and directors of the company from making any fraudulent and inequitable disposition of the funds and effects of the company amongst themselves or its creditors. No other, or ulterior intent, is declared by the action of the court, anterior to the date of the judgment, rendered in the county court in favor of the appellant. The injunction gave no intimation of a design to impose restrictions upon creditors, in the prosecution of their claims against the company, either in courts of law or of equity. And to infer the existence of such restrictions, in the absence of the annunciation of any ulterior intention of the court, would work injustice to the creditors, by exposing their claims to the plea of limitations interposed, not only by the company, but by the creditors, *inter se,* in subsequent proceedings for the recovery thereof, or involving the distribution of the effects of the company.

The principle of equity, applicable to the case before us, is correctly stated in 2, *Phillips' Cases,* 22, *Rankin vs. Harwood.* "The court will not restrain a creditor from prosecuting his legal remedy against the personal representatives of his debtor, unless there is a decree, under which the creditor has a present right to go in and prove his debt." The decree in this case was passed by the consent of parties; and was far short of that which the county court, doubtless, would have passed, had it been left uncontrolled by any such assent. The proper decree for the occasion, under the circumstances of the case, should have stated the ulterior object of the court, in placing the effects of the company in charge of receivers, to have been, that it might make an equitable distribution thereof amongst the creditors of the company: and the decree should have directed the receivers to give notice to the creditors, (in the usual mode,) to file their claims with the clerk of the court. Had such a decree been made, any creditor who should institute, or

continue the prosecution of a suit at law, for the recovery of a judgment on his claim against the company, would, on application to the county court, have been enjoined from so doing. And if no such preventive interposition were invoked, and a judgment were obtained, the court would regard it as an unwarrantable interference with the jurisdiction it had assumed, and reject it as a lien on the property in the hands of the receiver.

"The appointment of a receiver does not involve the determination of any right, or affect the title of either party, in any manner whatever." 1 *Bland's, Ch. R.*, 213, *Hannah K. Chase's* case.

"A receiver is an officer of the court. He is truly and properly the hand of the court; but his appointment determines no right, nor does it affect the title of the property in any way; it will not prevent the running of the statute of limitations. The holding of the receiver, is the holding of the court for him from whom the possession was taken." 1 *Bland's, Ch. R.*, 431, *Williamson vs. Wilson.*

"A receiver appointed by this court, (a court of equity,) is appointed on behalf of all parties, and not of the plaintiff or of one defendant only; therefore, if any loss arises from deficiency in his accounts, the estate must bear it. The effect of the appointment, however, is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately appear to be entitled to it; and when the party entitled to the estate has been ascertained, the receiver will be considered as his receiver." See 5, *Lib. of Law and Eq.*, 435, and the cases therein referred to.

No proceedings of the county court, requiring creditors to bring in their claims for the purpose of receiving their distributive proportions of the property of the company in the hands of the receivers, adopted after the rendition of the judgment, can operate retroactively to impair the validity of its lien. It is not pretended that any fraud or collusion was practised in obtaining the appellant's judgment against the *United States Insurance Company*. The circumstances attending it repel any such inference. The suit was instituted before any application

had been made to *Baltimore* county court, as a court of equity, for the appointment of receivers to take charge of the property and effects of the company; and the judgment subsesequently was duly obtained. It follows, from what has been hereinbefore stated, that the appellant's judgment is as much a lien on the real estate of the company, as if the appointment of receivers had never taken place. But in equity, it is only a lien on such interest in the real estate, as the company had therein at the time the receivers were appointed. To extend the lien to the increased value of the property, resulting from the payments of purchase money made thereon by the receivers, under the order of the county court, would be against all equity and conscience.

This court will sign a decree, reversing, with costs, the order of *Baltimore* county court, passed on the 7th of April, 1847, dismissing the petition of the appellant, and remanding the cause to that court, that such further proceedings may be had therein, as are consistent with the aforegoing opinion, and as the nature of the case may require.

DECREE REVERSED AND CAUSE REMANDED.