RHODES & WILLIAMS, *et al. vs.* AMSINCK & CO.,
Creditors of JOHNSON & BEHR.

*How far a Decree in Creditors' suit is a Final decision as to the
claim of the Complainants—Priority between Creditors—As-
sumption of control of Partnership assets by a Court of Equity,
a bar to proceedings at Law—Authority of Partner to Confess
judgment—Judgment against a single Partner binds theFirm—
Attachment on judgment.*

Where the claim of the complainants, in a bill to distribute the assets of a
debtor for the benefit of his creditors, is not excepted in the decree, it is to
be taken as established as legal and valid, not only as against the debtor,
but as against all the creditors coming in to claim distribution.

Where proceedings in attachment, on judgment or on warrant, have been
taken by a creditor, but no judgment of condemnation obtained before the
filing of a bill, by the attaching creditor and others, for distribution of the
assets of the debtor, the claim of the attaching creditor is entitled to no
priority by reason of his attachment.

Where a Court of Equity has assumed control over partnership assets and
ordered distribution to be made under its direction, no creditor, after such
decree, can institute or continue the prosecution of a pending suit at law for
the purpose of obtaining a priority over the other creditors; and any lien
asserted as a consequence of a judgment thus obtained will be disallowed.

Even during the existence of a partnership, there is no implied authority in
one partner to voluntarily appear and confess judgment to bind copartners.
Such a judgment binds only the partner confessing, and, in an execution
on such judgment, the confessing partner's separate interest in the partner-
ship property can alone be seized and sold. *A fortiori*, after dissolution of
the partnership, such an act of a partner, not professing to bind his copart-
ner, will not be effective as a partnership act.

In the case of a proceeding *in invitum* on a partnership contract, judgment may
be recovered against a single partner to bind the firm and its effects.

An attachment on judgment, while having some of the attributes of an execu-
tion, has, at the same time, especially as against the garnishee, many quali-

ties of mesne process.  The mere laying of the attachment, or the seizure of property under it, creates simply an inchoate lien, which can only be perfected by judgment of condemnation.

APPEAL from the Superior Court of Baltimore City, in Equity.

This was an appeal from an order of the Court below intructing the auditor that the appellees, Amsinck & Co., as assignees of Solomon, were entitled to priority in the distribution of the assets of Johnson & Behr among their creditors.    The other facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*J. D. Ferguson,* for the appellants.

The desire of a Court of Chancery in administering funds under its control, is to give an equal portion to each creditor.    *Cross et al. vs. Cohen,* 3 *Gill,* 257 ; and *Gibson vs. Finley,* 4 *Md. Ch. Dec.,* 79.  It is only when bound by a perfected and established lien that this rule of equality will be departed from.    In *Sanderson vs. Stockdale,* 11 *Md.,* 572, the rule is laid down that "Partnership creditors have no lien on partnership effects unless their debt is reduced to judgment, which will create a lien on real estate, and when execution is issued thereon a lien is created on the personalty."

The decree itself gives the creditor complainant no priority over the others, where (as in this case,) there is a deficiency to pay all.    *Baltzell vs. Foss,* 1 *H. & G.,* 504.

As to the *attachment on warrant;* conceding that this attachment, although professedly aimed only at Johnson's interest, was capable of affecting through his equity over them, as a partner, the *assets of the firm,* yet under the rule in *Sanderson vs. Stockdale,* this procedure created no

lien for Solomon. An attachment on warrant is not an execution. *Fisher vs. Johnson*, 6 *Gill*, 361. It is not a final but a mesne process. *Corner vs. Mallory*, 31 *Md.*, 473.

The inchoate lien created by the attachment in this case was waived, and the attachment itself virtually abandoned by the subsequent act of Solomon in filing the bill of complaint six months after. By invoking the aid of equity for the benefit of himself and all other creditors, he caused "a jurisdiction to attach which would be maintained for the protection and final adjudication of all the rights and interests involved." *Kunkel vs. Fitzhugh*, 22 *Md.*, 577.

And when as in this case this attachment proceeding remained "*in statu quo*" until the decree was passed and notice given to creditors, it became impossible for it to be carried to a final judgment to the prejudice of other creditors coming in. *Ellicott vs. U. S. Ins. Co.*, 7 *Gill*, 319.

As to the lien attributed to *the judgment confessed by Behr and attachment issued thereon.*

It was held below that from the proof and agreements in the previous record, and the coincidence of the amount of the confessed judgment with the debt set forth in the vacated deed, there could be no doubt that the cause of action was a partnership debt due by Johnson & Behr to Solomon. Conceding this to be the case, Behr had no right, two years after the dissolution of the firm, to bind it by a confession of judgment. *Dixon & Mills Case*, 6 *Rich. S. C. Law*, 487 ; *Ward vs. Howell*, 5 *H. & J.*, 60 ; *Ellicott vs. Nichols*, 7 *Gill*, 117; *Thompson vs. Frist*, 15 *Md.*, 24.

He could not impose new obligations on the firm or vary the character or form of those already existing. *Hurst & Berry vs. Hill*, 8 *Md.*, 399.

Even if he had a right to confess a judgment which would bind the assets of the firm, the rule in *Sanderson*

*vs. Stockdale,* has not been gratified so as to create a lien, in that no execution has been issued on the judgment which will bind the assets for distribution, they being purely partnership. For the attachment on the judgment, if regarded as an execution, is levied on the individual interest of Behr, and the whole record shows that the plea "*nulla bona*" of the garnishee is as true to-day as when it was filed. *Harden & Carson vs. Moores,* 7 *H. & J.,* 11 ; *Thompson vs. Balt. & S. S. Co.,* 33 *Md.,* 315.

The plea of the garnishee could not be set aside, and a judgment of condemnation given by a Court of Equity. *McPherson, et al. vs. Snowden,* 19 *Md.,* 233.

If the attachment on judgment did create an inchoate lien, it was not perfected when the decree was passed in this case, nor has it, or could it have been since that time. To have perfected it a judgment of condemnation ought to have been had against the garnishee and execution executed; for before such application he is liable to be sued by the defendant on the attached *choses.* *Brown vs. Somerville,* 8 *Md.,* 457.

The plaintiff in the attachment could have tested the validity of the deed by prosecuting his attachment, and having neglected to do so, he cannot complain because he loses its benefit.

The legal effect of the confession of judgment by Behr, and the acceptance thereof by Solomon was to extinguish Solomon's claim against the firm, and reduce it to an individual debt against Behr, and an open account demand against Johnson, a merger being prevented by Art. 45, Code, sec. 10. *Barker vs. Ayers,* 5 *Md.,* 207 ; *Thomas vs. Mohler & Graff,* 25 *Md.,* 45.

*Robert A. Dobbin,* and *Patrick M'Laughlin,* for the appellees.

The decree heretofore passed, establishes beyond question the debts to Solomon, to be debts due by the firm of Johnson & Behr, in its copartnership capacity.

The foundation of the decree is the debt, and without that debt having been proved, no decree could have been passed, or if passed, would have been affirmed. *Strike's Case*, 1 *Bland*, 67-69 ; *Welch vs. Stewart*, 2 *Bland*, 37 ; *Hammond vs. Hammond*, 2 *Bland*, 359 ; *Ward vs. Hollins*, 14 *Md.*, 158, 166.

In a creditor's suit, the claim of the creditor who files the bill of complaint, is established as stated in the bill, by the decree. *Maddox vs. Dent*, 4 *Md. Ch. Dec.*, 543 ; *Griffith vs. Reinart*, 6 *Gill*, 445, 453.

After a decree on a creditors' bill, no other suit will be allowed to go ; but until decree, other creditors prosecuting their claims will not be restrained. *Simmons vs. Tongue*, 3 *Bland*, 360 ; *Tessier vs. Wyse*, 3 *Bland*, 29 ; *Innes vs. Lansing*, 7 *Paige*, 583-4.

The complainants have obtained a lien which has fastened on the fund now for distribution, and by virtue of that lien are entitled to the same. To establish this lien they filed a duly authenticated record of a judgment obtained March 11th, 1867, and an attachment on that judgment laid in the hands of the trustee under the deed, and also an attachment on warrant. No rule of pleading requires that in a declaration against a copartnership, it is necessary to allege the copartnership. Partners are jointly and severally liable. 1 *Saunders Rep.*, 153, *n.* 1, 291, *b. n.* 4 ; 2 *Saunders on P. & Ev.*, 707 ; *Smith vs. Cooke*, 31 *Md.*, 179 ; *McCulloh vs. Dashiells*, 1 *H. & G.* 98.

One partner being in Court, the Court had jurisdiction, and a judgment rendered for a copartnership debt, against one of the partners, will bind the partnership assets. *Inbusch vs. Farwell*, 1 *Black*, (*U. S.*,) 566. *Johnston vs. Mathews*, 32 *Md.*, 363.

ALVEY, J., delivered the opinion of the Court.

This case has been in this Court on a former appeal, (34 *Md.*, 646,) when the main question involved was the

validity of the deed of assignment from Johnson & Behr, partners, to Eugene Cummiskey; and the deed having been vacated and set aside, the question on the present appeal arises in regard to the distribution of the fund, the proceeds of the effects of the partnership, among the creditors. Amsinck & Co., as assignees of Solomon, one of the original complainants in whose name the bill was filed to vacate the deed, not only claim to participate with the other creditors of the partnership in the distribution of the fund, but claim to have priority in such distribution; and hence the appeal.

The bill for the vacation of the assignment was filed on the 30th of August, 1867, by D. Bitter and D. Solomon, suing for themselves and all the other creditors of the alleged fraudulent grantors; and after the filing the bill, but before the decree vacating the deed, Solomon assigned his claim to Amsinck & Co., and the latter assumed the former's position, as complainant in the further progress of the litigation. The decree vacating the deed and requiring the administrator of the deceased assignee to pay over the assets to a trustee appointed by the Court, was passed on the 11th of February, 1871, and which decree was affirmed by this Court on the former appeal.

With respect to the nature and extent of the claim in controversy, the bill charged that Johnson & Behr in their partnership character, were indebted to D. Solomon in the sum of $5800, for goods sold and delivered to them previous to the date of the deed of assignment; and, in the deed of assignment itself, the debt due to Solomon is stated to be $5666.66. Behr, one of the debtor partners, was examined as a witness for the complainants, and he testified that the debt due Solomon at the date of the deed was about $5000, and thought it might have been as much as $5600. In this state of the proof in regard to the claim, and prior to the passage of the decree setting

aside the deed, it was agreed by and between the then parties to the cause, that the creditors then mentioned as preferred in the deed of assignment were, at the date of the deed, partnership creditors of the firm of Johnson & Behr, and that neither of the partners owed to such creditors any part of the amounts for which they were so preferred, except in their partnership capacity. This agreement was construed on the former appeal, to be an admission, not only of the partnership character of the debts referred to, but also of their amounts as stated in the deed. But the agreement could only bind those who were parties to it, and therefore, such of the creditors as might thereafter come in under the decree not bound by the agreement, were left at liberty to question the validity and character of the claims of those who were bound, except in so far as the decree may be regarded as having established beyond question the existence and validity of the claims of the complainants in the cause.

The general rule upon the subject as to how far the decree in a creditors' suit will be taken as a final decision on the claim of the original complainants, is well stated by Chancellor BLAND, in the case of *Welch vs. Stewart*, 2 *Bl.*, 38. It was there said by the Chancellor, "I take it to be a well settled rule of this Court, that on a creditors' bill, the decree for a sale in the usual general terms, virtually and necessarily establishes the claims of all the originally suing creditors, unless some of them should, by the decree itself, be specially excepted; since it is very clear, that no sale can be ordered, but to pay some one or more debts which have been established to the satisfaction of the Chancellor. But such a decree only establishes the claim of the plaintiff as a debt due from the estate of the deceased debtor, without prejudice to third persons, and consequently, if any others, who may have been allowed to come in as parties to the suit, can shew fraud or any other circumstance by which it shall appear

that the debt, as so far established, ought not to be permitted to stand in the way of their interests, it may be then shown and taken advantage of; because the introduction and reliance upon any such new and collateral matter, is not in any way incompatible with an admission of the stability of any of those points which had been previously adjudicated upon and determined by the decree.'' See, also, *Strike's Case*, 1 *Bl.*, 68 & 69; *Hammond vs. Hammond*, 2 *Bl.*, 359; *Griffith & Keys vs. Reigart*, 6 *Gill*, 445.

It is not contended, or attempted to be shewn, that the claim of Solomon is founded in or tainted with fraud, or that any collateral circumstances exist, such as to render it inequitable, as against those coming in under the decree, that the claim should be allowed. The decree therefore, not having excepted this particular claim, must be taken as having established it as a legal and valid one, not only against Johnson & Behr, but as against all their creditors coming in to take distribution of their assets; and though the decree is silent, as to the amount of the claim, and whether it be due from the grantors in the deed of assignment in their partnership character or otherwise, the facts of the case fully warrant the conclusion that the amount of the debt stated in the deed is correct, and that it was contracted as a partnership debt.

It is claimed, however, that the debt is not only thus established, but that it has acquired a right to priority in the distribution of the partnership assets, by reason of certain attachments which were laid in the hands of the assignee Cummiskey, before the deed of assignment was vacated; and, as a lien is claimed under the attachment proceedings, it becomes necessary to refer to those proceedings with some particularity.

There were two attachments; one by way of execution on a judgment against Behr, and the other on warrant

against Johnson. Neither of which resulted in judgment of condemnation.

On the 11th of March, 1867, Solomon sued Johnson & Behr, in an action of assumpsit, as joint contractors, declaring against them, as for goods sold and delivered; work done and materials provided; money lent; money paid for the defendants; money received by the defendants to the plaintiff's use; and money found to be due from the defendants to the plaintiff on accounts stated. There was no claim filed, and there was nothing disclosed on the face of the declaration, to show that the contract sued on was of a partnership character. It appears, that a few days before the institution of this suit, Behr, one of the defendants, executed a warrant of attorney, which authorized the attorney therein named to appear for him, and, by consent, to have the action docketed, and to confess judgment as against himself for $5657.69, with interest and costs; and, at the institution of the suit the warrant of attorney was filed, the appearance of Behr, by his attorney, entered, and judgment confessed as against Behr alone, no process appearing to have issued against Johnson. And on the 12th of March, 1867, the day after the confession of the judgment, an attachment by way of execution was issued thereon, commanding the sheriff "to attach any of the lands, tenements, goods, chattels and credits of the said William Behr," but containing no command or direction as to partnership property as such. This attachment was laid in the hands of Cummiskey on the 13th of March, 1867, and, upon the return thereof, the garnishee appeared and pleaded *nulla bona* on which issue was joined, and in that condition of the proceedings the case has been allowed to remain ever since.

Now, even during the existence of the partnership, there is no implied authority in one partner to voluntarily appear and confess judgment to bind his copartners; and

where one partner does voluntarily appear to an action and confess judgment as against all the partners, without the consent of his copartners, the judgment thus confessed binds only the partner confessing; and, under an execution on such judgment, the confessing or acting partner's separate interest alone in the partnership property can be seized and sold. *Green vs. Beals,* 2 *Caines,* 254; *Crane vs. French,* 1 *Wend.,* 311; *McBride vs. Hagan, Id.,* 335; *Grazebrook vs. McCreedie,* 9 *Id.,* 437; *Waring vs. Robinson,* 1 *Hoff. Ch.,* 524; *Pars. on Partn.,* 179, *note.* This being so, *a fortiori,* the act of the partner in appearing voluntarily and confessing the judgment against himself alone, after the dissolution of the partnership, and in no manner professing to bind his copartner, will not bind and be effective as a partnership act. The deed of assignment was made on the 29th of June, 1865, and from that time the partnership ceased to exist. By the terms of the deed, the partners, as between themselves, surrendered all power to bind the partnership assets, and divested themselves of all right and title thereto, in favor of their creditors. It was said by this Court in the case of *Ellicott vs. Nichols,* 7 *Gill,* 100, and again repeated in *Hurst & Berry vs. Hill,* 8 *Md.,* 403, that "the doctrine is fundamental, that from the moment the partnership terminates the partners become distinct persons with respect to each other, and that, consequently, one partner can have no power to subject, by his acts or declarations, his former associate to new obligations, burdens, or responsibilities," and in 3 *Kent's Com.,* 62, it is said that, after dissolution, the partners become distinct persons, and tenants in common of the joint stock; that one partner cannot impose new obligations on the firm, or vary the form or character of those already existing. This principle does not, however, apply to an adverse proceeding against a partner, for the recovery of a judgment *in invitum;* and judgments may be recovered on partnership

contracts against a single partner to bind the firm and its effects. *Johnston vs. Mathews,* 32 *Md.,* 363 ; *Inbusch vs. Farwell,* 1 *Black U. S. Rep.,* 566. It is clear, therefore, that the judgment confessed by Behr was binding upon him alone, and the attachment that issued thereon was directed only against his individual property.

But, if the position of the appellees were maintainable that the judgment and attachment could be executed against the partnership effects, still there has been no such proceeding on the attachment as to fix and secure a perfect lien on those effects. The attachment, while having some of the attributes of an execution, has, at the same time, especially as against the garnishee, many qualities of mesne process. It contains a *scire facias* clause, requiring the garnishee to be notified to appear and show cause against condemnation. To the writ and return the garnishee may plead as to an action. It is only after final judgment of condemnation on the return that final process of execution can issue. The mere laying of the attachment, or the seizure of property under it, creates simply an inchoate lien, which can only be perfected and rendered effectual by judgment of condemnation. In the attachment proceeding under consideration, the garnishee appeared upon the return of the writ, and pleaded *nulla bona.* Upon that plea an issue has been formed, and, until it be tried and determined, and judgment of condemnation entered, which, as we have seen, have not been done, there is no such lien created as can be enforced by a Court of Equity. And, indeed, the Court below, as a Court of Equity, having assumed jurisdiction and control over the partnership assets for the benefit of all the creditors, and having ordered distribution to be made under its direction, no creditor, after such decree, was at liberty either to institute or to continue the prosecution of a pending suit at law, for the purpose of obtaining a priority over the other

creditors in the distribution of the fund; and any lien asserted as a consequence of a judgment thus obtained would be rejected and altogether disallowed by the Court of Equity as an unwarrantable interference with its jurisdiction. *Ellicott vs. U. S. Ins. Co.*, 7 *Gill*, 307, 319.

The attachment on the judgment against Behr, therefore, affords no ground whatever for the claim of priority in the distribution of the fund now under the control of the Court.

Nor does the attachment on warrant against Johnson, the other partner, furnish a better claim for such priority. That attachment was issued on the 11th of March, 1867, and laid in the hands of Cummiskey on the 13th of the same month; and upon the return of the writ, the garnishee appeared, and, on behalf of the defendant in the attachment, pleaded not indebted; and, for plea in his own behalf, pleaded *nulla bona*. These pleas have never been determined, and, of course, there has been no judgment of condemnation, and it follows, from what has already been said, in reference to the attachment on judgment against Behr, that no lien has been created that can be recognized and enforced by a Court of Equity.

The claim of priority, therefore, by reason of these attachments, instead of being allowed should have been rejected by the Court below; and as another audit may be required, the order appealed from will be reversed, and the cause remanded for further proceedings.

*Order reversed and*
*cause remanded.*

(Decided 2nd July, 1873.)