(Decided 13th January, 1893.)

---

JACKSON BRO. & COMPANY *vs.* JOSEPH S. WILSON, Administrator of NORMAN BERRY, ROSA P. SUIT, and others. ROSA P. SUIT, in her own right, and as Executrix and Trustee under the will of SAMUEL T. SUIT *vs.* JOSEPH S. WILSON, Administrator of NORMAN BERRY, and others.

*Creditors' bill against Lunatic—Decree for Sale of Land to Pay debts—Merger of Claims in Decree—Interest—Sale by Heir of Interest in Land—Liens against Grantee.*

Proceedings in equity were instituted by the committee and trustees, and certain creditors of T. E. B., a lunatic, for the sale of his property for the purpose of paying his indebtedness to the petitioning creditors, and to all other creditors who might come in and establish their claims, and for the purpose of supplying means for his maintenance. Under said proceedings it was decreed, "that the lands in the proceedings mentioned, or so

Jackson *vs.* Wilson, Adm'r, *et al.*   Suit *vs.* Wilson, Adm'r.

much thereof as may be necessary to pay and satisfy the claims against the said T. E. B., a lunatic, and to provide for his support and maintenance, be sold;'' and the trustees appointed to sell were directed to give the usual notice to creditors to file their claims.   Upon exceptions to the auditor's accounts distributing the proceeds of sale, it was HELD:

1st. That certain promissory notes of the lunatic made in the District of Columbia, and in terms bearing interest at the rate of ten per cent. per annum until paid, and held by certain of the petitioning creditors, were not merged by the decree for sale, which was not in its nature final, and, the claimants were entitled to interest thereon at the rate of ten per cent. per annum certainly to the day of sale.

2nd. That it was only after each creditor had had ample opportunity to examine and test the validity and justice of the claims of every other creditor, and after all objections and exceptions had been heard and considered, that the final decree in the cause could be passed, establishing the claims of each creditor, and ascertaining the amount thereof; and not till then could the contracts on which the claims were founded be said to be fully merged in the decree.

The decree for the sale of the land of said lunatic was dated 24th of January, 1879.   The lunatic died in the year 1886.   T. O. B. was one of his two children, and as such entitled to participate in the distribution of the fund arising from the sale made under the decree.   In the years 1887 and 1888, by deeds duly executed T. O. B. conveyed to S. T. S. all his interest in said land.   T. O. B. collected at various times from two of the tenants occupying portions of the land, rent amounting to $1,095.   It did not appear in the case whether this rent was or was not collected by the permission or knowledge of the trustees; nor was there any proof that S. T. S. the grantee of T. O. B., ever knew, or had any knowledge, of such collection by him.   HELD:

That under these circumstances the interest of the devisee of S. T. S. in the proceeds of the sale of the land, could not be charged with the rents collected by T. O. B.

It has never been held, that when the heir conveys his interest in real estate, his grantee takes it subject, not only to the debts of the deceased ancestor, but to the debts of the heir, as well.

Jackson *vs.* Wilson, Adm'r, *et al.*  Suit *vs.* Wilson, Adm'r.

APPEALS from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court. The decree referred to in the opinion was passed on the 24th of January, 1879, and directed "that the lands in the proceedings mentioned, or so much thereof as may be necessary to pay and satisfy the claims against the said Thomas E. Berry, a lunatic, and to provide for his support and maintenance be sold." And notice to creditors was required to be given by the trustees under the decree, as follows: "And at the time of advertising said sale, the trustees are directed to give notice to the creditors of the said Thomas E. Berry to file their claims with the vouchers thereof in the office of the clerk of the Circuit Court for Prince George's County, within three months from the day of sale."

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and McSHERRY, J.

*F. Snowden Hill,* for the appellants, Jackson Bro. & Company.

*Charles H. Stanley,* for the appellant, Rosa P. Suit.

*Charles H. Stanley,* for the appellee, Rosa P. Suit, on the appeal of Jackson Bro. & Company.

*Joseph S. Wilson,* (with whom was *C. C. Magruder,* on the brief,) for the appellees, the administrator of Norman Berry, and others.

FOWLER, J., delivered the opinion of the Court.

The deficiencies of this record have been somewhat supplied by agreement of counsel. There are no objections made, however, to the regularity of the proceed-

.ings below, nor to the record of them before us; and it will, perhaps, be sufficient for a full understanding of the questions intended to be presented, and which were argued by counsel, to state briefly the facts which were conceded.

Proceedings were taken in the Circuit Court for Prince George's County, by the committee and trustees of a lunatic, the late Thomas E. Berry, together with the appellants, Jackson Brother & Company, and other creditors, to have his real estate sold for the purpose of paying his debts, and supplying means for his maintenance. By virtue of a decree passed in these proceedings, the property of the lunatic was sold; and the contention here is in regard to the distribution of the fund arising from such sale, and as to the disposition of certain rents collected by one of the parties to this suit. There are two appeals in this record—that of Jackson Brother & Company from the order ratifying account Q, and rejecting accounts N and P, so far as they reject or disallow certain claims for interest on notes held by Jackson Brother & Company, and that of Mrs. Rosa P. Suit, in her own right, and as executrix and trustee, from the order ratifying certain accounts charging her, as assignee of T. Owen Berry, with certain rents collected by him.

The appellants Jackson Brother & Company contend that they are entitled to ten *per cent.* interest on their claim from the date of the promissory notes on which it is based to the day of sale, the order appealed from having allowed interest at the rate of ten *per cent.* per annum only to the date of the decree, and thereafter to the day of sale, at the rate of six *per cent.* By the two notes produced in the cause as evidence of the claim of Jackson Brother & Company it appears that they were to receive interest at the rate of ten *per cent. per annum* until the payment of the principal.

The notes were made in the District of Columbia, where it is admitted the law authorizes interest to the extent of ten *per centum* per annum, if the parties make an agreement to that effect. It is conceded by the appellees that the appellants are entitled to the higher rate of interest to the date of the decree, but after that time, it is contended, that having come into a Court of this State, and converted their original contract into a decree, the appellants are entitled after the date of such decree to only six *per centum* to the day of sale, because the original contract is by operation of law merged in the decree, and thereby became a debt of record, and was thereafter governed by the *lex fori.*

Although it is often said, in general terms, that a simple contract is merged in a judgment or decree rendered upon it, and that all its powers to sustain rights and enforce liabilities terminated in the judgment or decree, (15 *Am. Eng. Encyl.*, 336,) yet it is also recognized as one of the limitations of this doctrine of merger, that the original contract is not in all cases to be entirely ignored subsequent to the rendition of a judgment or decree. *Freeman on Judgments,* (3 *Ed.*) sec. 244.

In the *Bank of the United States vs. Merchants Bank of Baltimore,* 7 *Gill,* 431, it is said that: "It is an acknowledged and familiar principle of the common law, that the original cause of action is considered as extinguished or merged by a judgment, when the judgment is held to be not merely *prima facie,* but conclusive evidence of the indebtment between the parties, and final, unless reversed, with respect to the subject-matter adjudicated."

Subsequently this Court in *Owens, Evans & Co. vs. Sprigg, et al.,* 2 *Md.,* 457, fully recognize and approve the general doctrine of merger as limited by Mr. *Freeman, ante;* and while it is true that the application of the rule as stated in *Owens, Evans & Co. vs. Sprigg, et al.,*

572 MARYLAND REPORTS.

Jackson *vs.* Wilson, Adm'r, *et al.* Suit *vs.* Wilson, Adm'r.

was held to be error in *Pinckney vs. Lanahan*, 62 *Md.*, 447, yet the doctrine itself has not been controverted. It is fully approved of by the Supreme Court of the United States in the case of *Blount vs. Windley*, 5 *Otto*, 176, and the general tenor of the authorities is to the effect, as held in *Owens, Evans & Co. vs. Sprigg, et al.*, that while a judgment on a note merges the note so that another action cannot be maintained upon it so long as the judgment is unreversed, yet "it is still undoubtedly true that Courts may sometimes look beyond the judgment, to see for what cause it was recovered." And in *Blount vs. Windley, supra*, the Supreme Court say: "The essential nature and character of the contract remains unclouded; and in deciding how far it may be affected by legislation, we must look mainly to the original contract." It is not necessary, however, to pursue this consideration further; for whatever may have been the effect of the decree in this case, if it had been a final and conclusive adjudication between the parties, we do not think it can be said to have that effect. In *Welch vs. Stewart*, 2 *Bland*, 38; *Hammond vs. Hammond*, 2 *Bland*, 359; *Rhodes & Williams vs. Amsinck & Co.*, 38 *Md.*, 345, it was held that a decree on a creditors' bill, expressed as the decree in this case is, in the general terms of such decrees, *establishes* the claims of all the originally suing creditors. But in none of these cases is it held that such establishment of the claim is a final and conclusive ascertainment of the amounts due to the several creditors. In other words, decrees on creditors' bills, and decrees like the one we are considering, providing for the sale of the debtor's land to pay his debts, and directing the trustees to give notice to all the creditors of said debtor to file their claims, may be, and often are, said to be conclusive as to the establishment or existence of the debts of the petitioning creditors; but from the very nature of the case, the exact amount

JANUARY TERM, 1893.     573

Jackson *vs.* Wilson, Adm'r. *et al.*   Suit *vs.* Wilson, Adm'r.

of these debts cannot be determined at the date of the decree for sale of the land, *prima facie* evidence of the debts of the petitioning creditors, such as the production of promissory notes, or the filing of *ex parte* affidavits, may be such satisfactory evidence as will justify the Court in passing a decree for sale on a creditors' bill. But that sale must be reported to and ratified by the Court; and thereafter the creditors,—the petitioning creditors included,—must, if required, not only establish by satisfactory proof that they have claims; but they must show by such proof the nature and amount thereof. After each creditor has had an ample opportunity to examine and test the validity and justice of the claims of every other creditor, and after all objections and exceptions have been heard and considered, the final decree in the cause is passed establishing the claims of each creditor and ascertaining the amount thereof. Then, and not till then, can the contracts on which the claims are founded be said to be fully merged in the decree. The two authorities cited by both the appellees and appellants, viz., *Wernwag vs. Brown,* 3 *Blackford (Ind.,)* 457; *Miller vs. Borroughs,* 4 *Johns. Chan.,* 436, support this view, but it was contended by the appellees that the decree having been passed for the sale of the land to pay the claims of the appellants and other petitioning creditors, which were specifically set forth in the petition, the decree and the petition must be construed together, and the former must be held as adopting and containing the language describing and setting forth the amounts of claims in the latter.

The decree does not appear to have been passed only for the purpose of paying the claims mentioned in the petition, but to pay those *and* all that should be filed in accordance with the notice given by the trustees, and afterwards proven by satisfactory evidence.

But, as we have already said, we cannot accept the view that the decree for sale merged the claim of the

appellants. We think, therefore, that the appellants, Jackson Brother & Company, are entitled to ten per cent. interest per annum certainly to the time they claim it— that is to say to the day of sale—August 18th, 1888.

What we have said disposes of this appeal, and it will not be necessary to consider the question raised under the provisions of the Constitution of the United States, Art. 1, sec. 10; for the appellants get by this ruling all they claim under their own construction of their contract. Nor need we consider what rate of interest the decree would have been subject to if it had been a final and conclusive decree, ascertaining the amounts of the debts of creditors.

In regard to the appeal of Mrs. Suit little need be said. It appears that T. Owen Berry was one of the two children of the late Thomas E. Berry, and as such would have been entitled to participate in the distribution of the fund which is here the subject of controversy. Mr. Berry, the father, died in 1886; and in the years 1887 and 1888 by deeds duly executed and recorded, T. Owen Berry sold and conveyed to Samuel T. Suit all his interest in the real estate in question.

T. Owen Berry collected at various times, from two of the tenants occupying portions of the land, rent amounting to the sum of $1095. We are unable to ascertain whether this rent was or was not collected by the permission or knowledge of the trustees. The record shows only that the rent was collected as above stated. Nor is there any proof whatever that Suit, the grantee of T. Owen Berry, ever knew or had any notice of such collection by him. Under such circumstances, the question is whether the interest of Mrs. Suit, the devisee of Samuel T. Suit, in the proceeds of sale of the real estate can be charged with the rents collected by T. Owen Berry.

It seems to us clear that her interest cannot be so charged. She stands in the same position, and holds her interest in the fund produced by the sale of the real estate subject to the same liens and burdens the land, or T. Owen Berry's interest therein, was subject to when he conveyed it to her devisor—and of course, subject to such liens and charges as she and he placed thereon while they respectively held title thereto.

But the claim here is based upon nothing of this kind. While it may be admitted, perhaps, as contended by the appellees in this appeal, that, if T. Owen Berry had not conveyed his interest in the real estate of his father to the devisor of the appellant, his share of this fund should be charged with the rents collected by him, and not accounted for, yet having in fact conveyed to a grantee who, it is conceded, had no notice whatever of the facts upon which this supposed equity is based, we think it was error to have charged such rents against the share of the appellant, Mrs. Suit. The land having descended to T. Owen Berry as heir-at-law, the title conveyed to Suit was a legal title, and he took the land subject to the debts of his grantor's father. In the case of a purchase of a devisee of a deceased debtor, "the purchaser is bound to take notice of the existence of claims against the deceased and the state of the personal assets." *Green vs. Early and Townshend*, 39 *Md.*, 231. And such was the case here. But it has never been held, as now contended, that when the heir conveys his interest in real estate, his grantee takes it subject not only to the debts of the deceased ancestor, but to the debts of the heir, as well.

Such a view ignores our registry laws, and would make it impossible for any one to ascertain with certainty the liens and charges to which land, or an interest like the one here sought to be charged, might be subject. The order appealed from must be reversed, and the cause

will be remanded that accounts may be stated in accordance with this opinion.

*Reversed and remanded.*

(Decided 13th January, 1893.)