761 A.2d 76

James F. RAUCH

v.

Barbara McCALL.

No. 1904, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Sept. 6, 2000.

Reconsideration Denied Nov. 14, 2000.

Cynthia E. Young, Annapolis, for appellant.

No brief or appearance by appellee.

Argued before SONNER, ADKINS and PAUL E. ALPERT (Ret., specially assigned), JJ.

PAUL E. ALPERT (Ret., specially assigned), Judge.

The marriage has ended, but the litigation lingers on. In this domestic relations case between Barbara J. McCall, appellee, and James F. Rauch, appellant, in the Circuit Court for

Montgomery County, appellant now presents the following questions for our review:

I. Where a contract provides that the party in breach shall be responsible for all attorney's fees and costs incurred by the party that is successful in enforcing the contract, and the amount spent in attempting to remedy the breach is documented to the trial court, is the court compelled to award that figure against the breaching party?

II. Did the trial court err in dismissing appellant's counts for conversion and detinue under his third amended complaint?

III. Did the trial court have authority to prohibit appellant from filing any pleading or document pro se?

IV. Did the trial judge have authority to require that all information concerning Ms. McCall's deferred employee compensation plan be released only to appellant's counsel and not to appellant contrary to the parties' agreement?

For the reasons that follow, we shall vacate the judgment of the circuit court and remand on question I., and affirm on question II. In light of our decisions on questions I. and II., we need not address questions III. and IV.

### Background

The parties were married on May 6, 1967. Two children were born to the marriage, both of whom are above the age of majority. The marriage began to disintegrate in early 1990. Appellee filed for divorce on June 13, 1990, but returned home and dismissed the divorce action soon thereafter. The parties separated permanently in December of 1990. A Separation Agreement was signed by both parties on October 16, 1991, as a prelude to the divorce, which was granted by the circuit court on February 16, 1993.

Although litigation between the parties has been almost continuous since 1990, this case arises out of the terms of the Separation Agreement, namely: (1) money owed to appellant

from the Qualified Domestic Relations Order ("QDRO") and (2) appellee's possession of appellant's personal property. On July 29, 1991, the parties reached an oral agreement on the record that (1) their personal possessions would be divided in half, and (2) appellee would move out of the marital home by October 15, 1991, taking her personal property and leaving appellant's personal property. Appellee left the home by October 15th; an examination of the property revealed, however, that some of appellant's personal property was taken by appellee.[1] Prior to signing the October 16th Settlement Agreement, appellant provided appellee with a list of the missing items to be returned by October 17th. Over the next few months, only a few of the items were recovered.

The parties also disputed the lack of a QDRO concerning appellant's rights to appellee's pension and profit sharing plans with Bell Atlantic, her employer, as called for in the Separation Agreement. Appellee had failed to disclose, or authorize Bell Atlantic to turn over, the contents of these plans. There was also evidence that appellee took a Hardship Withdrawal from her 401(k) in the amount of $44,800.00 sometime in early 1991 without disclosure to appellant, which was allegedly in direct violation of the Separation Agreement. Appellant did not learn of the withdrawal until March 30, 1993. Appellee also continually refused to sign the QDRO submitted by appellant.

The procedural history of these disputes is extensive; thus, to put the facts into context, we provide a brief historical overview.

---

1. Testimony and argument was presented at several of the various hearings regarding the circumstances of appellee's removal of appellant's property. Apparently, appellant had left his personal belongings on his front lawn while he was moving out. Appellee saw these items and had them sent to storage. The various reasons presented for moving these items is irrelevant to this appeal. Appellee first claimed that these items were returned almost right away, then later testified that some items were returned, some were damaged, and some were not returned until 1999.

## Voluntary Separation Agreement

On October 16, 1991, the parties signed a separation agreement ("Agreement"), to be incorporated but not merged into the divorce decree. With regard to the personal property and furnishings of the parties, the Agreement provided:

The parties have already divided between them, to their mutual satisfaction, all personal effects, household furniture and furnishings, and all other articles of personal property which heretofore have been held by them in common. Neither party shall make a claim to any such items which are now in the possession or under the control of the other party. Henceforth, each of the parties shall own, have and enjoy, independent of any right or claim of the other, all items of property of any kind, nature and description, and wheresoever situated, which are now owned or held by him or her with the full power to him or her to dispose of the same as fully and effectually in all respects and for all purposes as if he or she were unmarried. (See attached [computerized][2] inventory list).

The Agreement provided for counsel fees and the right to counsel. Both parties agreed to be *"responsible for their own legal fees incurred in the negotiation, preparation and execution of this Agreement."* [emphasis added]. Furthermore, *"in the event of a breach of the Agreement by either party, the party at fault shall be responsible for payment of all attorneys' fees and costs including expert witness fees . . . . "* [emphasis added].

Section IX of the Agreement dealt with pensions of appellee, who was a "participant in deferred employee compensation plan(s) sponsored or offered by her employer." The Agreement related that appellant was to be the alternate payee of the plans "according to the percentages provided in this paragraph (50/50)," and that any future court judgment or order "shall be in the form of or shall contain a . . . (QDRO)

---

2. The word "computerized" was added by a handwritten notation and initialed by both parties.

which shall meet the requirements of a QDRO as defined by ... ERISA ... as from time to time amended." This section further provided, in pertinent part:

Husband's equitable interest in each of Wife's plans is hereby declared to be fifty percent (50%) of the total benefits due to the Wife at any time ... Husband shall receive 50% of the Wife's interests in any plan(s), including any joint and survivor annuity or death benefits, if, as, and when such payments are made.... *The Wife has not taken any action since May 17, 1991 and shall take no further action to decrease any account balance in any plan(s) or diminish the employee or employer rate or percentage of contribution* (e.g. currently 10% of wife's gross salary, in regard to the Wife's 401 plan) without the prior written consent of Husband. Wife shall not cause any change in any provision of any plan either by action or inaction without advance notice and the written consent of Husband. Wife agrees to authorize all plan administrators to respond to Husband's request for plan status, plan financial reports or account statements within ten (10) days of a request. *Wife expressly agrees to cooperate and to execute such other documents as may be necessary to give effect to this provision of this Agreement*.... The parties further agree that until a Court Order of assignment is accepted and approved by the Wife's employer, the Court of appropriate jurisdiction shall retain jurisdiction to modify its order.

(Emphasis added).

### Hearing on February 17, 1995

On February 17th, a hearing on appellant's first amended complaint transpired to resolve the issues of the QDRO and the personal property. Based on the enormous amount of pleadings that appellant had filed in the case, the circuit court held that

the division of all the personal property belongs, and everything [in the] separation agreement, precludes him from now proceeding either in this domestic case or in any type

of replevin action, any claim to any further division of property.

Appellant had filed a replevin action in the district court, which was removed to the circuit court, where there was no jurisdiction. The court noted that the claim arose from the Agreement and was not appropriately phrased as a replevin action. The court went into a lengthy discussion with counsel over appellee's pension plans and the QDRO provided for in the Agreement, however, deferred ruling because not all of the evidence was before the court to render a decision.

## Court of Special Appeals

In July of 1997, an appeal was noted to this Court from the circuit court's denial of a Motion for Appropriate Relief, requesting the judge to sign a QDRO pursuant to the Agreement. In *Rauch v. McCall*, No. 1764, Sept. Term 1996, 116 Md.App. 745 (filed July 24, 1997), this Court held that the circuit court's order of June 20, 1996 was not a final judgment, and accordingly dismissed the appeal.

This Court noted, however, that appellee "has already bargained away a 50 percent interest in the QDROs in this case. It would appear that the actual purpose of any restrictions or limitations ... is to protect the payor of the pension (Bell Atlantic) as opposed to the participant spouse." We held that:

> Under the circumstances of this matter, prior to signing the QDRO in question, the chancellor may wish to determine whether Ms. McCall's failure to cooperate and her attorney's refusal to act was done so in good faith.

*Id.* (slip op. at 4).

Appellant had included an issue in the appeal regarding the replevin action; namely the circuit court's failure to afford him a hearing prior to its dismissal. This Court held that because the appeal filed was strictly related to the denial of the motion regarding only the QDRO, the court's failure to award a hearing on the replevin action was beyond its scope of review.

### Hearing on October 9, 1998

Yet another hearing transpired on October 9 [th] to resolve the QDRO disputes, specifically appellant's request that appellee sign the order. The court heard the evidence regarding the Agreement and dealings between the parties since its inception. The court concluded, however, that the only time period that was relevant in determining whether appellee withdrew from the funds in violation of the Agreement was after May 17, 1991.[3]

With regard to appellee's failure to disclose to appellant any information concerning the amounts in the accounts and any withdrawals *after* May 17, 1991, the court held that appellant was entitled to this information because the Agreement provided for a 50% share to each party. Thus, appellee was required to submit to appellant on these issues and authorize Bell Atlantic to disclose the contents of her plans. The court ordered that both parties prepare a QDRO that they could agree upon within 10 days, and if the parties could not agree, that the court would appoint an independent third party to prepare a QDRO at the parties' expense and submit it.

The court also refused to impose sanctions on either party because both parties "have through their actions perpetuated this and made this last longer than it needed to." Thus, the parties were required to each "bear the expense and cost of this continued litigation."

The issue regarding appellee's alleged failure to return appellant's personal property under the terms of the separation Agreement was raised again to the court. The court specifically stated that:

> based on the testimony I have taken today, I am satisfied that Ms. McCall has none of the property in her possession. That does not mean that she didn't breach the contract. She may have. That is another proceeding. But, as a

---

**3.** This decision was based on specific language in the Agreement stating that appellee had not taken any action on the pensions in violation of the agreement prior to May 17 [th].

replevin action, if she doesn't have it, I couldn't—unless she has it, I don't know how I could help ... I cannot order her to give back what she testified she doesn't have.

The court noted that appellant was entitled to "his day in court," to have a hearing on whether appellee breached the Agreement. In order to do so, the court needed appellant to produce all relevant information and evidence in order that the court could finally dispose of the matter.

### Hearing on April 6, 1999

The parties convened again in the circuit court on April 6 [th] on appellee's failure to answer interrogatories and motion to compel. The court refused to impose sanctions or hold either party in contempt of court. Rather, the court denied the motion and ordered (1) appellant to provide appellee with a list of the items belonging to him that he is claiming she had, and (2) gave appellee 15 days to answer these claims after receipt of the list. The court also noted for the record that this was not a tort case, involving conversion or trespass, but rather a cause of action arising from an alleged breach of contract.

### Hearing on July 8, 1999

On July 8, 1999, a hearing regarding the personal property took place. By this time, several of the items, if not all, had been returned to appellant.[4] The circuit court took testimony from both parties, and received exhibits, including an extensive list of items divided up by the parties in the separation. The court went down the list, item by item, in rendering its decision.

I accept some of the evidence offered by Mr. Rauch, some of the evidence offered by Ms. McCall. . . .

These are items that were to be distributed to him or held by him in accordance with the parties' separation agreement

---

4. Appellant asserts that these items were mysteriously returned on the eve of trial by appellee in an attempt to settle the case.

and the attached list of personal property to be divided on October the 16 th, 1991.

It is clear from the record that Mr. Rauch over the years has requested the return of that property or requested that property. . . .

The items that were of particular concern today are those items that were either returned damaged to him or not returned at all.

I have also considered the contends of Plaintiff's Exhibit No. 2, which is a letter Mr. Rauch wrote to . . . Ms. McCall's attorney, on August 29, 1992, demanding property that he believed was due him then and still was an issue at today's trial.

And I have tried to compare all of the exhibits and the evidence.

I find that *Ms. Mc.Call did in fact breach the parties' separation agreement* by removing certain property that was to be property of Mr. Rauch's.

And the issue then is what damage or relief Mr. Rauch should get for the property either returned damaged or not returned at all. . . .

(Emphasis added).

The court went on to say that the list was included as part of the Agreement and that appellee, despite its supposed unfairness, agreed to and signed it. "Ms. McCall's testimony was that she doesn't know if she read it or if she didn't, but it was adopted and became part of the agreement she did sign, and she is bound by it." Thus, the court said:

She has not to this point filed any petition to set the agreement aside or clarify it. So, she is bound by what she did sign. Ms. McCall's testimony was that she took this property when she left and moved into her town house in Silver Spring sometime in October of 1991, but after the signing of the agreement.

Her testimony was that she did that for reasons involving the harassment that she believed was being put on her by Mr. Rauch at that time and the record—the public record

then of court orders—some court orders ordering Mr. Rauch to stay away from her, the pressure she felt, and other reasons that she put on the record.

> **Nonetheless, she had agreed that they would be Mr. Rauch's property. So, to that extent, I find that she is in breach of the agreement.**

(Emphasis added).

The court then went into an extensive discussion regarding each item on the list, taking into consideration (1) valuation, (2) age, (3) depreciation, and (4) wear and tear of the property. The court found that the value of these items totaled $1,863.00 and entered judgment to appellant in that amount. Attorney's fees were awarded to appellant in the amount of $1,000.00, taking into consideration the entire proceedings, the history of the parties, and the extensive ten year long litigation involving the return of this property. Appellant's complaints for conversion, trespass, detinue, constructive trust, fraud and deceit, and punitive damages were dismissed by the court, as they were tort claims and this case involved a breach of contract.

An order to this effect was entered by the court on July 30, 1999. The QDRO was signed by both parties and is now in effect.[5] Appellant had also sought to strike ex parte orders entered against him preventing him from acting pro se and filing any pleadings or motions in the case with the court without legal representation. This motion to strike was denied by the court on September 9, 1999, along with all other outstanding motions. This appeal followed on September 27, 1999.

## Discussion

### I. Attorney's Fees

Appellant asserts that the provision regarding attorney's fees in the Agreement governed the trial judge's discretion,

---

5. There is no evidence in the record indicating when the QDRO was signed by both parties. Appellant asserts, however, that it was signed in the fall of 1998 or early 1999. The exact date the QDRO was signed is irrelevant for purposes of this appeal.

necessitating application of only the contractual standard, and precluding the judge from applying the reasonableness standard. We are persuaded that the trial judge must enforce the contractual standard set forth in the Agreement, but from a reasonableness standpoint. In other words, the trial judge, on remand, is to consider the reasonableness of the documentation provided by counsel for appellant in reaching the amount of attorney's fees that appellee is required to pay as a result of her breach of the Agreement.

At the July 8, 1999, hearing, the court engaged in the following analysis in reaching the conclusion that appellant was entitled to $1,000 in attorney's fees:

Mr. Rauch is also making a claim for attorney's fees. I have considered his claim and the amount of the claim.

I have considered the entire proceedings in this matter, and I have considered this particular issue that was tried here today and weighed it against all of the other pleadings that have been filed and the setting under which—

*And I do give credence—even though [appellee], I believe, did breach the contract by taking this property, I do give some credence to her motivation, if you will, not necessarily to breach a contract,* but just the state of affairs that did exist at that time.

And I take into consideration the public history of this litigation and the litigation initiated on this issue by Mr. Rauch.

And after considering all of the factors, I am going to award him an attorney's fee of $1,000, and I will make that part of the order.

(Emphasis added).

The court found that appellee breached the Agreement with respect to the return of appellant's property. These holdings were noted at the July 8, 1999 hearing. The Agreement provided that "in the event of a breach ... by either party, the party at fault shall be responsible for payment of all attorney's fees." [6] Nonetheless, the court awarded appellant

---

**6.** There was no language in the agreement stating that the fees had to be "reasonable."

only $1,000.00 in attorney's fees, when counsel had provided the court with documentation evidencing a substantial amount more incurred in fees.

Pursuant to Md.Code Ann., Family Law, § 8–101, parties in a domestic case may form enforceable separation agreements. See *Jackson v. Jackson*, 14 Md.App. 263, 286 A.2d 778 (1972) (courts are "empowered to recognize and enforce" separation agreements). A provision regarding attorney's fees may be included in the separation agreement. *See Peterman v. Peterman*, 14 Md.App. 310, 286 A.2d 812 (1972).[7] In resolving disputes regarding enforcement of separation agreements, courts are required to apply the law of contracts:

> A separation agreement being a contract between the parties is subject to the same general rules governing other contracts, and particular questions must be resolved by reference to the particular language of the agreement.

*See Pumphrey v. Pumphrey*, 11 Md.App. 287, 273 A.2d 637 (1971); *Eigenbrode v. Eigenbrode*, 36 Md.App. 557, 373 A.2d 1306 (1977). A settlement agreement, like the one in the present case, that has been incorporated but not merged into the divorce decree, may be enforced by the court as an

---

7. Md.Code Ann., Family Law, § 12–103 provides the rule for awarding counsel fees in domestic cases, involving custody, support, or visitation. This rule provides, in pertinent part:

    (a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

    (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties....

    (b) Before a court may award costs and counsel fees under this section, the court shall consider:

    (1) the financial status of each party;

    (2) the needs of each party; and

    (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

    (c) Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

independent contract. See *Fultz v. Shaffer,* 111 Md.App. 278, 681 A.2d 568 (1996).

There is no appellate decision in Maryland on the specific question of whether a provision regarding payment of attorney's fees without mention of "reasonableness," means that the court is to award the full amount of fees requested by the non-breaching party without an analysis into its reasonableness. We, therefore, analogize this case to *Holzman v. Fiola Blum, Inc.,* 125 Md.App. 602, 726 A.2d 818 (1999), where a real estate broker brought an action against the sellers of a home to recover his commission and attorney's fees. The contract between the parties provided that if the broker prevailed in a court action against the seller, he would be "entitled to recover in such action his/her reasonable attorney's fees and costs." 125 Md.App. at 611, 726 A.2d 818. The broker prevailed, and the circuit court awarded him $12,408 in attorney's fees, which was the amount pursuant to the one-third contingency agreement. The issue in the case was whether this amount was binding as a reasonable fee, as the parties did not agree to pay "whatever legal fee appellee [the broker] might agree to pay its attorney." *Id.* at 637, 726 A.2d 818.

This Court stated that while, "[o]rdinarily, a prevailing party is not entitled to recover attorney's fees ..., a trial court generally may award attorney's fees only when statutorily authorized or when, as here, a contract between the parties specifically authorizes such fees." *Id.; see Hess Construction Co. v. Board of Educ.,* 341 Md. 155, 159, 669 A.2d 1352 (1996); *Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership,* 100 Md.App. 441, 452, 641 A.2d 977 (1994).

The award of attorney's fees by the court is a "factual matter which lies within the 'sound discretion of the trial judge and will not be overturned unless clearly erroneous.'" *Maxima Corp.,* 100 Md.App. at 452, 641 A.2d 977 (citing *Reisterstown Plaza Associates v. General Nutrition Ctr., Inc.,* 89 Md.App. 232, 248, 597 A.2d 1049 (1991)). This rule is echoed in domestic cases:

The amount of the award of counsel fees is within the discretion of the chancellor and, although his discretion is subject to review by this Court, the award should not be disturbed unless he exercised his discretion arbitrarily or his judgment was clearly wrong.

*Blum v. Blum,* 59 Md.App. 584, 604–5, 477 A.2d 289 (1984).

■ The *Holzman* court held that "when an award of attorney's fees is based on a contractual right, the losing party is 'entitled to have the amount of fees and ordinary expenses proven with certainty and under the standards ordinarily applicable for proof of contract damages.'" 125 Md.App. at 637–38, 726 A.2d 818 (citing *Maxima Corp.,* 100 Md.App. at 453, 641 A.2d 977)(internal citations omitted). Competent evidence must be presented by the moving party to justify an award of attorney's fees under contract law:

(a) the party seeking the fees, whether for him/herself or on behalf of a client, always bears the burden of presenting evidence sufficient for a trial court to render a judgment as to their reasonableness; (b) an appropriate fee is always reasonable charges for the services rendered; (c) a fee is not justified by a mere compilation of hours multiplied by fixed hourly rates or bills issued to the client; (d) a request for fees must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged; (e) it is incumbent upon the party seeking recovery to present detailed records that contain the relevant facts and computations undergirding the computation of charges; (f) without such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.

*Holzman,* 125 Md.App. at 638–39, 726 A.2d 818 (citing *Maxima Corp.,* 100 Md.App. at 452–53, 641 A.2d 977). See *Head v. Head,* 66 Md.App. 655, 669–70, 505 A.2d 868 (1986).

We were persuaded in *Holzman* that it was "clear that, following the presentation of evidence in support of a claim for attorney's fees, the 'trial court must still evaluate the reason-

ableness of the fees.' " *Holzman,* 125 Md.App. at 639, 726 A.2d 818 (citing *Kilsheimer v. Dewberry & Davis, et al.,* 106 Md.App. 600, 621, 665 A.2d 723 (1995), *cert. denied,* 341 Md. 406, 671 A.2d 20 (1996)). See also *Head, supra* at 669, 505 A.2d 868. ("In the absence of a contract, statute or court rule fixing compensation, an attorney who performs legal services for his or her client is entitled to be paid the reasonable value of those services."). In evaluating the claim, the amount of the award "must be based on a record that includes information that sufficiently and competently supports the court's findings." *Id.* at 639, 726 A.2d 818 (citing *Maxima Corp., supra* at 458, 641 A.2d 977).

> The court must consider certain factors in it analysis:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; .(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Id.* at 639–40, 726 A.2d 818 (citing *Reisterstown Plaza,* 89 Md.App. at 246–47, 597 A.2d 1049)(in turn citing Rule of Professional Conduct 1.5(a)). See also *Head, supra* at 670, 505 A.2d 868; *Foster v. Foster,* 33 Md.App. 73, 77, 364 A.2d 65 *cert. denied,* 278 Md. 722 (1976). In *Holzman,* this court found that the trial court was not presented with sufficient evidence, and did not meet the criteria, of that required in contract law for awarding attorney's fees, even if based on a contractual agreement.

Similarly, in the case *sub judice,* the court was still required to analyze the reasonableness of the attorney's fees, despite the lack of the specific word "reasonable" in the

Agreement. The circuit court did not rely on an evaluation into the reasonableness of the fees as required by applicable contract law. As such, on remand, the court is to conduct the appropriate analysis into the amount of reasonable attorney's fees due to appellant as a consequence of appellee's breach of the Agreement.

It was implicit in the Agreement that the fees awarded to the non-breaching party were to be "reasonable."

## II. Tort Counts

The circuit court did not err in dismissing appellant's tort counts. In reviewing the dismissal of these counts, we are to "determine whether the trial court was legally correct." *Hrehorovich v. Harbor Hosp. Center, Inc.,* 93 Md. App. 772, 785, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993). The court was legally correct in dismissing these portions of the complaint, if it did not disclose a "legally sufficient cause of action." *Id.* When reviewing the court's decision, "we accept as true all well-pleaded facts and allegations in the complaint, together with reasonable inferences properly drawn therefrom." *Lopata v. Miller,* 122 Md.App. 76, 83–84, 712 A.2d 24, *cert. denied,* 351 Md. 286, 718 A.2d 234 (1998) (*citing Simms v. Constantine,* 113 Md.App. 291, 296–97, 688 A.2d 1 (1997)) (internal citations omitted). Moreover, "[d]ismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Id.* at 84, 712 A.2d 24.

During the April 6, 1999 hearing, the circuit court concluded that appellant's pursuit of his personal property was firmly grounded in a breach of contract action based on the terms of the Agreement, not a tortious act. At the July 8, 1999 hearing, the court dismissed appellant's claims for conversion, detinue, constructive trust, fraud and deceit, and punitive damages based on the conclusion reached on April 6th. Appellee was required to return appellant's property based on the terms set forth in the Agreement. Any failure to do so raises a breach of that Agreement, not an action in tort.

Appellant relies on *Bender v. Bender,* 57 Md.App. 593, 471 A.2d 335 (1984). It is inapposite. Thus, the court was legally correct in dismissing these counts.

**JUDGMENT AFFIRMED IN PART, VACATED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**