29 A.3d 724

**SUNTRUST BANK**

v.

**Frank J. GOLDMAN, et al.**

**No. 803, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Sept. 30, 2011.

Jonathan F. Harris & Kathleen C. Morris (Matthew A. Egeli, Hartman and Egeli, LLP, on the brief), Annapolis, MD, for Appellant.

Pro Se (no brief submitted), for Appellee.

Panel: JAMES R. EYLER, WRIGHT, RAYMOND G. THIEME, JR., (Retired, specially assigned), JJ.

EYLER, JAMES R., J.

In this case, a suit for breach of a line of credit agreement, we are asked to determine whether the Circuit Court for Baltimore County abused its discretion in awarding to the prevailing party the amount of attorneys' fees actually incurred[1] when the agreement allowed that party, after default

---

1. The cases, briefs and other documents cited by us in this opinion use the terms "attorney's fees," "attorney fees," "attorneys' fees" and "attorneys fees." While we leave undisturbed the particular language

by the debtor, to collect as attorneys' fees "fifteen percent (15%) of the principal plus accrued interest ... or reasonable attorneys' fees as allowed by law." We shall affirm.

## Factual and Procedural Background

Appellees,[2] Frank J. Goldman and Lisa B. Goldman, on February 20, 2007, entered into a line of credit agreement with SunTrust Bank, appellant, with a credit limit of $390,000. This line of credit agreement was entitled "Access 3 Equity Line Account Agreement and Disclosure Statement," ("the agreement") which, according to its terms, was secured by a deed of trust on appellees' primary or secondary residence. The agreement contained various provisions relating to the administration of the loan, including provisions relating to draws on the line of credit by appellees, payment and prepayment of amounts due, the applicable interest rates, and applicable fees. The section entitled "Lender's Rights" contained the following paragraph.

> We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. *This includes, subject to any limits under applicable law, our costs of collection, including court costs and fifteen percent (15%) of the principal plus accrued interest as attorneys' fees or reasonable attorneys' fees as allowed by law,* if any sums owing under this Agreement are collected by or through an attorney at law, whether or not there is a lawsuit, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by law, you will also pay any court costs, in addition to all other sums provided by law. (Emphasis added).

---

when quoting other sources, here we employ "attorneys' fees" for the sake of consistency. These terms, however, are interchangeable.

**2.** The Goldmans are the mortgagors and titular appellees; however, they did not participate in this litigation. Arguments in this court on their behalf were made by three organizations, the Public Justice Center, Civil Justice, Inc., and the Maryland Consumer Rights Coalition, Inc., as amici curiae.

After making a payment on October 9, 2008, appellees defaulted on the line of credit. On June 30, 2009, appellant filed a complaint in circuit court, naming appellees as defendants, and alleging that appellees failed to make payments due under the agreement. Appellant claimed principal due in the amount of $401,373.31, interest in the amount of $14,259.31, and attorneys' fees in the amount of $60,206.00 (15% of principal). On August 21, 2009, appellees were served with process. Appellees did not answer, and on October 22, 2009, the court entered an order of default.

On November 25, 2009, appellant filed a motion for entry of default judgment, with supporting affidavit by appellant's finance officer. On March 12, 2010, the circuit court held a hearing, attended by appellant only. On the same day, the court entered judgment by default against appellees for the principal loan balance in the amount of $401,373.31 and accrued pre-judgment interest in the amount of $29,961.87. The court deferred ruling on appellant's claim for attorneys' fees, stating that the question of fees would be determined at a future hearing.

On March 22, 2010, appellant filed a motion to revise judgment, in which it requested that the judgment be revised to include attorneys' fees in the amount of $60,206.00, being 15% of the principal balance or, in the alternative, attorneys' fees in the amount of $3,094.00, the amount of fees incurred to date, plus costs incurred in the amount of $164.30.

On April 27, 2010, the court granted appellant's motion to revise judgment and awarded attorneys' fees and costs to appellant in the amount of $3,258.30 ($3,094.00 plus $164.30). In a written memorandum opinion, the court explained why it denied appellant's request for attorneys' fees of $60,206.00, equal to 15% of the principal, and how it determined an appropriate fee award. Based on the opinion in *Mortgage Investors of Washington v. Citizens Bank & Trust Company of Maryland*, 278 Md. 505, 366 A.2d 47 (1976), the court, observing that a provision in a contract providing for attorneys' fees is one of indemnity, concluded that appellant could

not recover fees in an amount greater than it was required to pay its attorneys. The court then stated:

> At the hearing in the present case, there was no evidence presented to the Court of the attorney's fee agreement or the amount that Sun Trust Bank is required to pay its attorneys. The Affidavit of Nancy Johnson, Consumer Finance Officer for Sun Trust Bank, does not establish the agreement between Sun Trust and its attorneys or the amount Sun Trust is required to pay its attorneys. Ms. Johnson's Affidavit merely cites the 15% stated in the agreement with Defendant. With respect to whether Sun Trust established its entitlement to "reasonable attorneys' fees" as provided in the agreement with the Defendant, there was no evidence at the hearing regarding the services or work performed by the attorneys or time expended on the matter.
>
> In its Motion to Revise Judgment, Sun Trust states that its attorney's fees actually incurred to date are $3,258.30 ... this Court finds that Sun Trust is not entitled to a judgment of $60,206.00 for attorney's fees. The Court will award attorney's fees in the amount actually incurred, Three Thousand, Two Hundred Fifty–Eight Dollars and Thirty Cents ($3,258.30).

The court did not address whether the 15% provision was reasonable because appellant did not produce evidence that it had agreed to pay its attorneys 15% of the amount of principal. On May 10, 2010, appellant filed a "Motion to Revise Judgment to Award Attorney's Fees as Provided For in Contract," which the circuit court denied on June 4, 2010.

### Question Presented

Appellant noted a timely appeal and presents one question for our review: "Whether the circuit court erred in refusing to award SunTrust Bank 15% of the principal balance as attorney's fees when the underlying agreement states the Defendants will pay 'fifteen percent (15%) of the principal plus accrued interest as attorney's fees or reasonable attorney's

fees as allowed by law.'" Finding no abuse of discretion, we affirm.

## Standard of Review

An appellate court will disturb a trial court's award of attorneys' fees based on a contractual agreement between the parties only if the trial court abused its discretion. *Monmouth Meadows Homeowners Ass'n v. Hamilton*, 416 Md. 325, 332, 7 A.3d 1 (2010). In addition, a "trial court's determination of the reasonableness of attorneys' fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous." *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520 (2006).

## Discussion

On appeal, appellant contends the agreement should be enforced, and according to its plain language, the circuit court should have awarded attorneys' fees in the amount of 15% of the principal. Appellant observes that the attorneys' fee provision in the agreement applies to fees and costs incurred in collection, not just those incurred in obtaining a judgment. Appellant seeks the 15% not only to cover actual fees it has incurred to date but also fees it may incur in the future, as a result of efforts to enforce the judgment. Appellant argues that if it is denied the 15% in fees, it will not be able to sue to enforce the fee provision with respect to fees and costs incurred in collection efforts, after final judgment, because of the doctrine of merger. *See AccuBid Excavation, Inc. v. Kennedy Contractors, Inc.*, 188 Md.App. 214, 233, 981 A.2d 727 (2009) (citing *Jackson v. Wilson*, 76 Md. 567, 571, 25 A. 980 (1893) (the entry of final judgment in an action on a contract extinguished a contract based right to attorneys' fees)). Recognizing that fee provisions are in the nature of indemnity agreements, appellant argues that, if it is awarded the 15% fee, at the time of satisfaction of the judgment, it will credit appellees for that portion of the $60,206.00 (15% of principal) not actually paid by appellant to its attorneys. We do not find these arguments persuasive.

■ Appellant correctly asserts that attorneys' fee provisions are in the nature of indemnity agreements. *See Webster v. People's Loan, Sav. & Deposit Bank of Cambridge*, 160 Md. 57, 61, 152 A. 815 (1931); *Mortgage Investors of Washington v. Citizens Bank & Trust Co. of Maryland*, 278 Md. 505, 509, 366 A.2d 47 (1976). In *Mortgage Investors*, pursuant to the terms of the loan document, the debtor agreed that, in the event of post-default litigation, it would pay "all court costs and an attorney's fee of 15% of the outstanding balance at the time of the suit." *Id.* at 506, 366 A.2d 47. The creditor prevailed on summary judgment and was awarded the outstanding principal and interest as well as a separate judgment of $150,640.26 as attorneys' fees, which was 15% of the debt owed at the outset of litigation. *Id.* at 508, 366 A.2d 47. On appeal, this Court reduced the 15% award to $105,750.58, the amount the creditor actually owed to its attorneys. *Id.* The Court of Appeals affirmed, stating that "since the contract was one of indemnity, [the creditor] cannot collect from [the debtor] an amount greater than the $105,750.58 which it was required to pay under its agreement with its attorneys." *Id.* at 510, 366 A.2d 47.

■ Thus, Maryland law limits the amount of contractual attorneys fees to actual fees incurred, regardless of whether the contract provides for a greater amount. The contract may provide that the amount of fees is determined by a percentage or some other method, but to comply with the indemnification requirement, the amount of fees paid pursuant to the agreement between the claimant and its attorneys must equal or exceed the amount provided for in the contract. In addition, as discussed below, the amount must be reasonable. Appellant relies on *Webster* as authority to support its argument that, if it is awarded a fee in the amount of 15% of principal, it can satisfy the indemnification requirement by later crediting appellees with the amount of fees not actually incurred. In *Webster*, the Court of Appeals stated the following:

If the plaintiff pays less for the services of his attorney than the amount stipulated, or allowed by the court where the amount is not specified in the instrument, then it is his duty

to remit or credit the difference; if he pays more than the fees entered, then he is out the excess ... After an entry of satisfaction, the defendant may obtain relief by an accounting.

160 Md. at 63, 152 A. 815.

*Webster* dealt with a judgment by confession, however, and it must be read in that context. Historically, confessed judgments were entered at the time of the filing of the complaint by the clerk of the court, authorized by statute or rule,[3] without judicial oversight and based entirely on the terms of the underlying note. The defendant in a confessed judgment action could raise a defense, including challenging the amount of attorney's fees, but only *after* the entry of judgment by the clerk. Because the amount of the confessed judgment was entered at the beginning of the action, by a clerk acting without judicial oversight, contractual attorneys' fees provisions had to provide for either a specific dollar amount or a percentage of a sum certain. The clerk, lacking the authority of the judiciary to interpret contracts or find facts, was not able to determine the amount of "reasonable" attorneys' fees or actual attorneys' fees at the time the judgment was entered. Today, the procedure is different. Md. Rule 2–611, governing the circuit court procedure for confessed judgments, was amended in 2010 to include section (b), which requires a court to review a confessed judgment for factual and legal validity before the clerk may enter the judgment.[4]

---

**3.** When *Webster* was decided, clerks of the court were authorized to enter confessed judgments by *art. 26, sec. 6* of the Maryland Code. *Webster*, 160 Md. at 60, 152 A. 815. The procedure for confessed judgments later was governed by Md. Rule 645. *See, e.g., Billingsley v. Lincoln Nat'l Bank*, 271 Md. 683, 685, 320 A.2d 34 (1974). Today, Md. Rule 2–611 supplies the procedure to be followed by circuit courts for confessed judgments.

**4.** Md. Rule 6–211(b) provides: Action by court. If the court determines that (1) the complaint complies with the requirements of section (a) of this rule and (2) the pleadings and papers demonstrate a factual and legal basis for entitlement to a confessed judgment, the court shall direct the clerk to enter the judgment. Otherwise, it shall dismiss the complaint.

Thus, the current rules require judicial review of confessed judgments at the outset, and accordingly, the reviewing court can make a preliminary determination as to the availability and reasonableness of attorneys' fees to be entered as part of the confessed judgment.

*Mortgage Investors,* a non-confessed judgment case, is consistent with *Webster.* The Court in both cases applied the indemnification requirement. With respect to appellant's assertion that fees can be awarded in a greater amount than actually incurred at the time of judgment, subject to credit later, we note that the *Mortgage Investors* Court did not permit the creditor to collect the full 15% fee with the understanding that the debtor would be credited with the unused portion. Instead, it allowed collection of only those fees actually incurred and which the creditor was required to pay to its attorney. *Mortgage Investors,* 278 Md. at 510, 366 A.2d 47.

In order to avoid the indemnification issue, appellant contends that Md. Rules 2–626 and 3–626, governing satisfaction of money judgments in the circuit and district courts, respectively, may provide a procedural mechanism for determining post-judgment fee awards of the type appellant seeks. These Rules provide that, after a money judgment is entered, and the debtor satisfies the judgment, the creditor shall file a statement that the judgment has been satisfied. If the creditor does not file a notice of satisfaction, the debtor may file a motion for an order declaring that the judgment has been satisfied.

These rules were not intended to address the issue of crediting a judgment debtor with unpaid amounts of attorneys' fees that were part of the judgment. There is no procedural mechanism for doing so. Judgments may exist for years without being satisfied. It would be impossible to determine if the attorneys' fee portion of a judgment was excessive unless and until the judgment was satisfied because, until then, additional fees might be incurred. Moreover, appellant's position presupposes a debtor who will be active and will

ultimately satisfy the judgment. There is simply no workable way to monitor the crediting of fees, as proposed by appellant.

In addition to satisfying the principle of indemnification, the amount of a fee awarded must be reasonable. Current law allows a court to grant only those attorneys' fees it finds reasonable. *Monmouth,* 416 Md. at 333, 7 A.3d 1. This is true even when the contract purports to require full indemnification by the losing party without any requirement that the fees awarded be reasonable. *See Myers,* 391 Md. at 207, 892 A.2d 520; *See also Rauch v. McCall,* 134 Md.App. 624, 635–6, 761 A.2d 76 (2000) (rejecting the argument that "the provision regarding attorney's fees in the Agreement governed the trial court's discretion, necessitating application of only the contractual standard, and precluding the judge from applying the reasonableness standard" when the contract did not mention reasonableness.). In cases sounding in contract such as the one before us, the reasonableness of an attorneys' fee award is to be measured using the factors in Rule 1.5(a) of the Maryland Lawyers' Rules of Professional Conduct.[5] "Courts should use the factors set forth in *Rule 1.5* as the foundation for analysis of what constitutes a reasonable

---

**5.** Rule 1.5(a) of the Maryland Lawyers' Rules of Professional Conduct provides that:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth,* 416 Md. at 336–337, 7 A.3d 1. In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately, and it need not necessarily hold an evidentiary hearing to determine an appropriate award. *Id.* at n. 10, n. 12, 7 A.3d 1. A contractual provision providing for a fee determined by percentage is not *per se* unenforceable, but it must be reasonable and must reflect the actual billing arrangement.

To reiterate, appellant observes, and we agree, that the attorneys' fee provision in the agreement extends to post judgment collection efforts. The underlying point of law that appellant seeks to circumvent by claiming unincurred fees, subject to later credit, is the doctrine of merger. As appellant states in its initial brief:

> It is also important to note that SunTrust's only opportunity to protect its indemnity rights is at the time judgment is entered. This court previously found that a "post-judgment request for attorney's fees based on provisions of the same contract" for which the court had already entered judgment was not allowed." *AccuBid,* 188 Md.App. at 232 [981 A.2d 727]. The attorney's fees provision, as part of the contract, merged into the judgment terminating all contract rights. *Id.* at 233 [981 A.2d 727]. If not enforced at the time judgment is entered, SunTrust's indemnity rights vanish.

It is well established in Maryland and other jurisdictions that "under the rule of merger, 'a simple contract is merged in a judgment or decree rendered upon it, and that all its powers to sustain rights and enforce liabilities terminated in the judgement or decree.'" *AccuBid,* 188 Md.App. 214 at 233, 981 A.2d 727.

In Maryland, the entry of final judgment on a contract case extinguishes any contract-based right to further attorneys' fees because "attorney's fees recoverable pursuant to a contract are part of the damages claim." *AccuBid,* 188 Md.App. at 231, 981 A.2d 727 (citations and quotations omitted); *Monarc Constr., Inc. v. Aris Corp.,* 188 Md.App. 377,

399, 981 A.2d 822 (2009). As part of the damages claim, rather than as a collateral or ancillary matter that may be litigated separately, any lingering claims for attorneys' fees have no legal ground upon which to stand after the underlying contract is merged into final judgment and ceases to exist as an independent cause of action. Absent an exception, therefore, after all appeal rights are exhausted and the judgment in this case becomes final, appellant's contractual right to attorneys' fees will be extinguished because the agreement will have merged into that judgment.

A merger can be avoided by legislative action, *i.e.*, a legislative body may create a statutory remedy allowing parties to collect post-judgment legal expenses incurred when the underlying contract provides for the award of attorneys' fees. For example, the California Legislature in 1992 provided by statute for the recovery in specified circumstances of attorneys' fees incurred following a final judgment in enforcing the judgment. The Court of Appeal of California, Second Appellate District, Division Five, in *Chinese Yellow Pages Co. v. Chinese Overseas Marketing Serv. Corp.*, 170 Cal.App.4th 868, 881, 88 Cal.Rptr.3d 250, 261 (2008), succinctly described the advent and application of that legislation:

> [T]he [California] Legislature in 1992 adopted the third sentence in the current provision of [Cal.Civ.Proc.Code §] 685.040, which provides for a postjudgment attorney fees award under specified circumstances [when the underlying contract provided for an award of attorneys' fees]. The express purpose of the 1992 amendment to section 685.040 was to provide for postjudgment fees incurred in enforcing the judgment, thus abrogating the *Chelios* [*Chelios v. Kaye*, 219 Cal.App.3d 75, 268 Cal.Rptr. 38 (Cal.Ct.App.1990) ] holding, which deprived a creditor of fees incurred in state and federal courts ... Based on the foregoing, we conclude section 685.040 can permit the recovery of reasonable and necessary attorney fees and cost incurred in enforcing a judgment. The express language of section 685.040 extends to legal expenses incurred in the enforcement of the judgment. (Citations omitted).

As we discussed in *AccuBid*, however, California's statute serves only to allow for post judgment fees in specific circumstances, and absent those circumstances, the doctrine of merger continues to terminate contractual rights to fee reimbursement upon final judgment. *AccuBid*, 188 Md.App. at 235 n. 6, 981 A.2d 727. There is no similar or otherwise relevant legislation in Maryland.

Merger may also be avoided because of public policy expressed in legislative enactments. The Maryland Court of Appeals has read into some statutes the availability of post-judgment fees and costs, if reasonable in amount. In *Pak v. Hoang*, 378 Md. 315, 335, 835 A.2d 1185 (2003), the Court of Appeals held that a tenant may recover post judgment fees from a landlord as part of reasonable attorneys' fees despite the silence on the topic of the relevant statute because "denial of attorney's fees in the case at bar would diminish the remedial nature of [the statute]." *Pak* dealt with litigation surrounding the Maryland Security Deposit Act, Maryland Code (2003 Repl.Vol.), § 8–203 of the Real Property Article, which allows a tenant to collect from a landlord who improperly withholds a rental apartment security deposit "threefold of the withheld amount, plus reasonable attorney's fees." *Id.* The Court recognized that litigation over security deposits often involves relatively small amounts of money and "potential disparity between certain tenants and landlords," leading to the possibility that "a landlord could delay, impede and actively thwart the collection of the judgment until it is no longer cost effective for the tenant to pursue collection of a judgment." *Id.* at 329, 835 A.2d 1185. Coupling this potential injustice with the intent of the legislature that the statute provide an additional remedy for tenants beyond those at common law, the court held that post judgment fees could be reasonable under the statute in order to "avoid rendering the remedy ... relatively meaningless." *Id.* at 336, 835 A.2d 1185. There is no similar remedial statute at issue in the case before us.

Another possible method of avoiding the merger bar is for the parties to clearly state their intent in the contract that the

fee provision shall not merge into the judgment. The doctrine of merger is implicated frequently in family law cases where the parties' contractual separation agreement is followed by a court's divorce decree. In *Johnston v. Johnston,* 297 Md. 48, 57, 465 A.2d 436 (1983), the Court of Appeals discussed as an issue of first impression the effect of a non-merger clause in a separation agreement on the subsequent divorce decree. The separation agreement at issue in that case provided that:

> This agreement shall be offered in any such [divorce] suit, and if acceptable to the court, shall be incorporated by reference in the decree that may be granted therein. Notwithstanding such incorporation, *this agreement shall not be merged in the decree, but shall survive the same* and shall be binding and conclusive on the parties for all time. *Id.* at 54, 465 A.2d 436. (Emphasis added).

In order to determine the effect of the non-merger clause in that separation agreement, the *Johnston* Court discussed at length the merger jurisprudence of other states and scholarly analysis of the doctrine and held that "where the parties intend a separation agreement to be incorporated but not merged in the divorce decree, the agreement remains a separate, enforceable contract and is not superseded by the decree." *Id.* at 58, 465 A.2d 436. The court there viewed the language of the agreement as demonstrating the parties' mutual intent that it not merge into the divorce decree and found that intent controlling:

> "[W]here, as in the instant case, the agreement provides that it shall be *incorporated but not merged* in the decree, it is patent that the parties did not intend merger and the agreement survives as a separate and independent contractual arrangement between the parties. On the other hand, where ... the agreement does not include a non-merger clause and is incorporated in the decree, the agreement is superseded by the decree." *Id.* at 56, 465 A.2d 436. (Emphasis in original).

We are not aware of any other circumstance in Maryland in which merger has been avoided, based on the intent of the parties as expressed in the contract.

Nevertheless, in *Monarc Constr.*, 188 Md.App. at 398, 981 A.2d 822, we recognized that, under some circumstances, the parties to a contract may be able to expressly agree that a provision for shifting post judgment collection fees survives a final judgment on the underlying contract, but such agreements will be strictly construed. The first question is one of contract interpretation, *i.e.*, does the contract provide for shifting of post judgment fees? In the case before us, the agreement provides for collection costs, which necessarily refers to a time post judgment. The second question is whether the language is sufficiently clear to avoid the effect of merger. We continue to leave open the possibility that, under certain circumstances, merger may be avoided if the parties clearly so intend. We do not have to delineate those circumstances in this opinion because we conclude that the language in the agreement before us is not sufficiently clear to exempt it from operation of the merger doctrine. There is no express language stating that the parties intend that the fee provision shall not merge into a judgment on the agreement. Moreover, assuming that language can be sufficiently definite to avoid merger without using a form of the word "merger," the agreement in this case simply employs general collection language, frequently used, especially in loan documents. If we were to hold that the language is sufficiently clear to constitute an exception to the merger bar, the exception would consume the rule, without a clear expression of intent.

To summarize, if a contract calls for fees and costs incurred in pursuing a breach, as a matter of contract interpretation, there is no issue with respect to post judgment fees and costs. If a contract calls for the shifting of fees and costs incurred in post judgment collection efforts, and assuming that it does not avoid the doctrine of merger, a trial court should permit the requesting party to put on evidence of fees that will, with certainty, be incurred in addition to those actually incurred at that time. While we recognize that such proof, requiring certainty, will ordinarily be difficult to present at that time, our conclusion is consistent with the general rule that costs of collection are not recoverable absent a statute or public policy

providing for such recovery. *See Deutsche Credit Corp. v. Keeler*, 96 Or.App. 257, 772 P.2d 1358 (1989), in which the Court of Appeals of Oregon took a similar approach. In *Deutsche Credit Corp.*, the Oregon court noted that the prevailing party "presented evidence that it would incur at least $5,000 of legal services after the judgment in efforts to collect it. The [trial] court could consider that evidence when it awarded attorney fees." *Id.* at 1360.

The approach we adopt allows creditors to indemnify themselves from those costs certain to be incurred following default without "unduly burdening consumer and other commercial transactions, [ ] indefinitely delaying finality, and [ ]spawning a host of ancillary litigation." *Hatch v. T & L Associates*, 319 N.J.Super. 644, 726 A.2d 308, 310 (1999). To allow the question of attorneys' fees to remain open following judgment could leave open that question for the years or decades it may take for a mortgage creditor to achieve satisfaction on a defaulted loan.

Awards of attorneys' fees must, of course, be reasonable under MRPC 1.5, as applied in accordance with the Court of Appeals' instructions in *Monmouth*, 416 Md. at 336–339, 7 A.3d 1.

We now return to the circuit court's decision in the case before us. As noted above, the agreement requires appellees, in the event of default, to pay appellant "fifteen percent (15%) of the principal plus accrued interest as attorneys' fees or reasonable attorneys fees as allowed by law." This disjunctive language, on its face, authorized the trial court to award either 15% of principal as legal fees or "reasonable legal fees." In either event, the amount of the fee award had to be reasonable, regardless of the language in the agreement. In its memorandum opinion, the court noted the reasonableness clause in the agreement, rejected the 15% requested by appellant, and awarded appellant attorneys' fees incurred to the date of the judgment. Faced with no evidence as to any agreement to pay attorneys' fees other than on an hourly rate basis and no evidence relating to fees certain to be incurred in

the future, the trial court properly exercised its discretion in awarding only incurred attorneys' fees determined to be reasonable as to amount.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**